# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **XIAOTIAN LIU**,<br><br>**Plaintiff,**<br><br>v.<br><br>**KRISTI NOEM**, Secretary of the Department of Homeland Security;<br><br>**TODD LYONS**, Acting Director of the Immigration and Customs Enforcement;<br><br>**Defendants.** | No. _____ |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

## INTRODUCTION

Pursuant to Counts 1 and 2 of Plaintiff's Complaint for Declaratory and Injunctive Relief, Plaintiff Xiaotian Liu requests a Temporary Restraining Order to (i) enjoin Defendants from terminating his F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) require Defendants to set aside their termination determination.

Since September 2023, Xiaotian has been studying computer science as a doctoral student at Dartmouth College in Hanover, New Hampshire. He has not committed any crime or even a traffic violation. Nor has he shown any violence (or even participated in any protest) in the United States or elsewhere. He came to the United States in 2016 to study computer science. Indeed, he has already proven his academic ability, as he obtained a G.P.A. of 4.0 out of 4.0 for his Masters program.

However, his dream of finishing his doctoral program and obtaining a Ph.D. is now in severe jeopardy because the Department of Homeland Security ("DHS") terminated his F-1 student status in the SEVIS system[1] without notifying him or even his school on or about Friday, April 4, 2025. Xiaotian is not alone with respect to this abrupt termination of student status. Numerous foreign students in the United States were recently notified by their schools that their F-1 student status was terminated for unspecified reasons.[2]

Because of this termination, Xiaotian faces imminent and irreparable harm. Xiaotian faces potential immigration detention and deportation. He is no longer authorized to participate in his

---

[1] SEVIS is "the web-based system that [DHS] uses to maintain information regarding:" F-1 "students studying in the United States[.]" https://studyinthestates.dhs.gov/site/about-sevis.
[2] Elizabeth Román, "5 Umass Amherst students have visas revoked," *NHPR* (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked (attached as Ex. G); Katy Stegall and Esmeralda Perez, "Five USCD students' visas revoked and additional person deported, university confirms," *CBS8* (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional-deported/509-2c257e52-4a31-42f7-8e3e-f6bd92a287b3 (attached as Ex. H) Molly Farrar, "Feds quietly revoke visas of multiple Umass, Harvard students," *Boston.com* (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/ (attached as Ex. I).

1

Ph.D. program as a research assistant, which puts him in financial and career jeopardy because his research assistantship is not only his only source of income, but also a core component of his doctoral training. Moreover, the abrupt termination of his F-1 student status in the SEVIS system will prevent him from making meaningful progress in his doctoral program and obtaining his Ph.D. Xiaotian likely accrues unlawful presence daily as he is likely out of immigration status, which significantly affects his chance of reinstating his F-1 student status in the future. *See Jie Fang v. Director United States Immigration & Customs Enforcement*, 935 F.3d 172, 176 (3d Cir. 2019) (noting that a student should not have been out of a valid F-1 student status for more than 5 months for a reinstatement application).

    To be clear, Plaintiff does *not* challenge the revocation of Plaintiff's F-1 *visa* in this case. Instead, Plaintiff brings this lawsuit to challenge DHS's unlawful termination of his F-1 student *status* in the SEVIS system.[3] At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard. *See Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard."); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). No such process was provided here with respect to the termination of student status, warranting relief under Count 1 of Plaintiff's Complaint.

    Further, as to Count 2 of Plaintiff's Complaint, the revocation of an F-1 visa does *not* constitute a failure to maintain F-1 student status under the SEVIS system and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system. For the agency-initiated termination of F-1 student status in the SEVIS system, DHS's ability to terminate F-1 student

---

[3] There is a difference between a F-1 student visa and F-1 student status. The F-1 student visa refers only to the document noncitizen students receive to enter the United States, whereas F-1 student status refers to students' formal immigration classification in the United States once they enter the country.

2

status "is limited by [8 C.F.R.] § 214.1(d)." *See Jie Fang*, 935 F.3d at 185 n.100. Under this 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status under the SEVIS system *only* when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. In other words, under this regulation, the revocation of an F-1 visa does *not* provide a basis to terminate F-1 student status under the SEVIS system. DHS's own policy guidance confirms that "[v]isa revocation is *not*, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (emphasis added).[4] Rather, if the visa is revoked, *the student is permitted to pursue his course of study in school*, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[5] If DHS wishes to terminate F-1 student status under the SEVIS system after (or independent of) revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d). *See Jia Fang*, 935 F.3d at 185 n.100. DHS has not done so here.

Because of these imminent and real harms, Plaintiff requests that the Court grant a temporary restraining order to (i) enjoin Defendants from terminating his F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) require Defendants to set aside their termination determination.

---

[4] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[5] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

## FACTUAL BACKGROUND

Xiaotian is a 26-year-old doctoral student at Dartmouth College who has been pursuing a study of computer science since September 2023. *See* Aff. of Xiaotian (attached as Ex. A); LinkedIn Public Profile (attached as Ex. C). Xiaotian is a citizen and national of the People's Republic of China. Xiaotian first came to the United States in August 2016 as an F-1 student to pursue an undergraduate program at Wake Forest University. He graduated with a Bachelor of Science in Mathematics and Computer Science in May 2020. Xiaotian continued his studies at Wake Forest University to pursue the Masters program in computer science in September 2020.

In May 2021, Xiaotian returned to China to renew his F-1 visa, but the application went into administrative proceedings. Due to the extended visa application process and the ongoing COVID-19 pandemic, he decided to take a gap semester in Fall 2021 with the approval of Wake Forest University. In late September 2021, after successfully receiving his renewed F-1 visa, Xiaotian informed his academic advisor, the Computer Science department chair, and the Computer Science department administrator at Wake Forest University of his intention to return to the United States for the Spring 2022 semester.

Although Xiaotian submitted a detailed graduation plan, he was unaware that he also needed to contact the Designated School Official (DSO) at Wake Forest University, who was in charge of updating his F-1 status, to request the reinstatement of F-1 student status in the SEVIS system. On January 2, 2022, Xiaotian arrived at the Detroit Metropolitan Wayne County Airport. However, because his F-1 student status was not reactivated in the SEVIS system, he returned to China. Due to China's 28-day mandatory quarantine, Xiaotian applied for another gap semester and began researching computer science with other researchers in China. With this research, Xiaotian published a paper titled "Dual Contrastive Prediction for Incomplete Multi-View

Representation Learning," which is publicly available online.[6] (attached as Ex. D). Xiaotian ultimately and successfully returned to Wake Forest University on July 23, 2022, to resume his studies and graduated with a Master of Science in Computer Science in May 2023 with a GPA of 4.0 out of 4.0.

In September 2023, Xiaotian began his Ph.D. in Computer Science at Dartmouth College. He returned to China in June 2024 for a routine F-1 visa renewal and came back to the United States in August 2024 to continue his doctoral studies without any issues. Most recently, in December 2024, Xiaotian traveled to Vancouver, Canada, to attend an academic conference without any issues.

On April 4, 2025, Dartmouth College informed Xiaotian that his F-1 student status in the SEVIS system was terminated. According to the email he received from Dartmouth College, the College "discovered this evening that your F-1 record in SEVIS has been terminated by the Department of Homeland Security." Ex. B. The College explained that the notation that can be seen in Xiaotian's SEVIS record is the following: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Id. However, Xiaotian has not committed any crime (or even a traffic violation as he does not drive). Ex. A at 3 ¶18. He has complied with all rules and regulations as an F-1 student. Id. He does not know why his visa was revoked, and his SEVIS record (F-1 student status) was terminated.

This termination has put Xiaotian's education, research, and career trajectory at risk. In particular, he is no longer authorized to work as a research assistant, which will severely affect his ability to complete his studies and obtain a Ph.D. This termination may also put Xiaotian in

---

[6] https://www.computer.org/csdl/journal/tp/2023/04/09852291/1FFH9aFSLkc.

immigration detention and deportation—an outcome other students have already faced. *See, e.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025). Moreover, the reinstatement of Plaintiff's F-1 student status is critical as it can serve as a form of relief and defense in the potential removal proceedings. *See* Aff. of Attorney Stephanie Elona Young Marzouk (attached as Ex. J).

## STANDARD OF REVIEW

"A temporary restraining order 'is a provisional remedy imposed to maintain the status quo until a full review of the facts and legal arguments is available.'" *Ginzburg v. Martínez-Dávila*, 368 F. Supp. 3d 343, 347 (D.P.R. 2019) (quoting *Pro-Choice Network v. Schenck*, 67 F.3d 377, 388–89 (2d Cir. 1995)). The same factors considered for a motion for a preliminary injunction apply to a motion for a TRO: the likelihood of success on the merits; the likelihood of irreparable harm in the absence of relief; the balance of equities; and whether injunctive relief is in the public interest. *Tirrell v. Edelblut*, 747 F. Supp. 3d 310, 313 (D.N.H. 2024). These factors are satisfied here.

## ARGUMENT

1. **THE TERMINATION OF PLAINTIFF'S F-1 STUDENT STATUS WAS UNLAWFUL**

Defendants' termination of Plaintiff's F-1 student status under the SEVIS system was unlawful for two independent reasons: First, it violates the Due Process Clause of the Fifth Amendment under the Constitution (Count 1); and second, it violates the Administrative Procedure

Act, 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d).

    a.    **The Termination Violates the Fifth Amendment's Due Process Clause (Count 1)**

Defendants' termination of Plaintiff's F-1 student status straightforwardly violates the Fifth Amendment's Due Process Clause. As an admitted noncitizen student in the United States, Plaintiff has due process rights. *See Hernandez Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) ("due process 'applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent'") (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). The basic principle of a noncitizen's due process rights is "the right to notice and the nature of the charges and a meaningful opportunity to be heard." *Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997).

However, in this case, Defendants broke these promises. Defendants did not provide any notice to Plaintiff or his school about their decision to terminate Plaintiff's F-1 student status. Without knowing when Plaintiff's F-1 student status was terminated, Plaintiff learned about this termination only because his school discovered it during the school's inspection of SEVIS on April 4, 2025.

Nor did Defendants comply with the requirements of providing adequate explanation and a meaningful opportunity to respond. Defendants provided a vague and ambiguous explanation that Plaintiff's F-1 student status in the SEVIS system was terminated on the grounds of "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal record check and/or had had their VISA revoked." Ex. B. However, this explanation is inadequate to be consistent with the requirements under the Due Process Clause. Plaintiff has not committed any crime (or even a traffic violation, as he does not drive). Ex. A. He has maintained his student

7

status. Thus, the criminal record check or failure to maintain student status could not serve as the basis for terminating his F-1 student status.

Accordingly, Defendants' failure to provide notice, adequate explanations, and meaningful opportunity to terminate Plaintiff's F-1 student status is in violation of the Due Process Clause.

### b. The Termination Violates the Administrative Procedure Act (Count 2)

Defendants' termination of Plaintiff's F-1 student status under the SEVIS system also violates the Administrative Procedure Act (APA). As a preliminary matter, Defendants' termination of Plaintiff's F-1 student status is a final agency action for which this Court has jurisdiction to review. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order"). On the substantive issue, Defendants had no statutory or regulatory authority to terminate Plaintiff's F-1 student status based simply on revocation of a visa.

Critically, DHS's ability "to terminate an F-1 [student status] is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate student status *only* when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. Accordingly, the revocation of a visa does *not* constitute a failure to maintain status and cannot, therefore, serve as a basis for termination of F-1 student status. If a visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record of F-1 student status is terminated. However, the SEVIS record of F-1 student status may not be terminated as a result of visa revocation after a student has been admitted into the United States because <u>the student is permitted to continue the authorized course of study</u>. *See* ICE

Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[7] (attached as Ex. E). DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id*. Rather, if the visa is revoked, the student *is permitted to pursue his course of study in school*, but upon departure, the SEVIS record of F-1 student status is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[8] (attached as Ex. F).

Moreover, Plaintiff has maintained his F-1 student status. Ex. A at 3 ¶18. Under the regulation, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status." However, none of these violations occurred in Plaintiff's case. Plaintiff has not committed any crime. He has not engaged in unauthorized employment. Nor has he provided any false information to DHS.

Because Defendants unlawfully terminated Plaintiff's F-1 student status without any statutory or regulatory authority, Defendants' termination should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including 8 C.F.R. § 214.1(d).

***

---

[7] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[8] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

9

At bottom, Defendants' termination of Plaintiff's F-1 student status violates the Constitution and the APA. Defendants provided no notice, adequate explanation, or meaningful opportunity for Plaintiff to respond. Nor do Defendants have statutory or regulatory authority to terminate Plaintiff's F-1 student status, including under 8 C.F.R. § 214.1(d). The termination must be set aside and enjoined.

## 2.     THE EQUITIES STRONGLY FAVOR AN INJUNCTION

Plaintiff will suffer irreparable injury if Defendants' termination determination is not set aside and enjoined. First, Plaintiff faces possible detention and deportation because of the unlawful presence stemming from this termination. "Deportation is a drastic measure, often amounting to lifelong banishment or exile." *Hernandez-Lara*, 10 F.4th at 29 (internal quotations omitted). *See* Ex. A at 4 ¶21 ("As a direct consequence of the termination of my SEVIS record, I fear immigration detention and deportation as I may not have valid student status.").

Relatedly, this Court's order of setting aside Defendants' termination of Plaintiff's F-1 student status can provide a critical form of relief and defense in removal proceedings. *See* Ex. J at ¶3 (explaining an example where "once USCIS had granted reinstatement [of F-1 student status] to [a] student, the Immigration Judge granted [the student's] request to terminate the student's removal proceedings . . . because the student had gained lawful status" even when the student's visa was revoked).

Second, this termination will result "in the loss 'of all that makes life worth living'" for Plaintiff's academic studies and career trajectory. *Bridges v. Wixon*, 326 U.S. 135, 147 (1945). *See* Ex. A at 3-4 ¶20 ("Losing my F-1 status puts my education, research, and career trajectory at risk, and I fear being forced to leave the country before I can complete my Ph.D. program.").

Third, this termination will result in extreme financial and academic hardship to Plaintiff. *See* Ex. A at 4 ¶22 ("Moreover, I am no longer authorized to work as a research assistant, nor am I eligible to receive any stipend from my Ph.D. program. This has placed me in an extremely difficult financial and academic position, as my research assistantship is not only my only source of income but also a core component of my doctoral training.").

Fourth, this termination will likely result in the accrual of out of status daily, which is a critical factor for Plaintiff's future reinstatement of F-1 student status. *See Jie Fang*, 935 F.3d at 176 (noting that a student should not have been out of a valid F-1 student status for more than 5 months for a reinstatement application).

By contrast, Defendants have advanced no substantial interest in terminating Plaintiff's F-1 student status. Indeed, granting a temporary restraining order would merely maintain the status quo that has been in place for 9 years of Plaintiff's studies in the United States from his undergraduate program to his Ph.D. program.

Defendants also have no legitimate interest in enforcing this unconstitutional and unlawful termination or in exceeding Defendants' statutory and regulatory authority by terminating Plaintiff's F-1 student status in a manner that is contrary to federal law, and "the public interest is harmed by the enforcement of [termination determination] repugnant to the United States Constitution." *Tirrell v. Edelblut*, No. 24-CV-251-LM-TSM, 2024 WL 3898544, at *6 (D.N.H. Aug. 22, 2024).

Thus, the balance of equities and the public interest both strongly favor a temporary restraining order.

## CONCLUSION

The Court should issue a temporary restraining order (i) enjoining Defendants from terminating Plaintiff's F-1 student status under the SEVIS system, and (ii) requiring Defendants to set aside their termination determination.

Xiaotian Liu,

By and through his Counsel,

*/s/ SangYeob Kim*
Gilles R. Bissonnette (NH Bar: 265393)
Henry Klementowicz (NH Bar: 21177)
SangYeob Kim (NH Bar: 266657)
Chelsea Eddy (NH Bar: 276248)
AMERICAN CIVIL LIBERTIES UNION OF
   NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
Phone: 603.227.6678
gilles@aclu-nh.org
henry@aclu-nh.org
sangyeob@aclu-nh.org
chelsea@aclu-nh.org

Ronald L. Abramson (N.H. Bar: 83593)
SHAHEEN & GORDON P.A.
180 Bridge Street
Manchester, NH 03104
603.792.8472
rabramson@shaheengordon.com

Date: April 7, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, a true and exact copy of the foregoing was served via email upon Defendants' counsel as follows:

Rob Rabuck, Assistant United States Attorney
Rob.Rabuck@usdoj.gov

Dated: April 7, 2025                    Respectfully submitted,

                                        */s/ SangYeob Kim*
                                        SangYeob Kim (NH Bar: 266657)