**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

|  |  |  |
|---|---|---|
| XIAOTIAN LIU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00133-SE-TSM |
| | ) | |
| KRISTI NOEM, | ) | |
| in her official capacity as the Secretary of | ) | |
| Homeland Security, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION**
**FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATUTORY AND REGULATORY FRAMEWORK ......................................................3

    A.    The F-1 Nonimmigrant Student Classification ..........................................................3

    B.    The Student and Exchange Visitor Information System (SEVIS) ............................4

    C.    The Privacy Act of 1974 ...........................................................................................5

FACTS AND PROCEDURAL HISTORY .........................................................................7

STANDARD OF REVIEW .................................................................................................8

ARGUMENT .......................................................................................................................9

I.     THERE IS NO CASE OR CONTROVERSY BEFORE THE COURT BECAUSE
      SEVP DID NOT TERMINATE MR. LIU'S F-1 NONIMMIGRANT STATUS. ..............9

II.    THE GOVERNMENT HAS NOT WAIVED SOVEREIGN IMMUNITY UNDER
      THE APA FOR MR. LIU'S CHALLENGE TO THE CONTENTS OF HIS
      SEVIS RECORD ...........................................................................................................10

III.   SEVP'S CHANGE TO MR. LIU'S SEVIS RECORD IS NOT A FINAL AGENCY
      ACTION. .........................................................................................................................16

IV.   MR. LIU CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE
      MERITS OF HIS DUE PROCESS CLAIM IN COUNT I..................................................18

V.    MR. LIU CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE
      MERITS OF COUNT III. ...............................................................................................19

VI.   MR. LIU CANNOT ESTABLISH IRREPARABLE HARM. ..........................................22

VII.  THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR THE
      GOVERNMENT...............................................................................................................24

VIII. THE COURT SHOULD REQUIRE MR. LIU TO POST A BOND. ..............................25

CONCLUSION ..................................................................................................................20

CERTIFICATE OF SERVICE ..........................................................................................21

i

# TABLE OF AUTHORITIES

## CASE LAW

*Air Sunshine, Inc. v. Carl*,
  663 F.3d 27 (1st Cir. 2011) .................................................................... 18

*Alvarez v. U.S. Immigr. & Customs Enf't*,
  818 F.3d 1194 (11th Cir. 2016) ............................................................ 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 20

*Bakhtiari v. Beyer*, Civ.,
  A. No. 06-1489, 2008 WL 3200820 (E.D. Mo. Aug. 6, 2008) ................ 19

*Barahona-Gomez v. Reno*,
  236 F.3d 1115 (9th Cir. 2001) .............................................................. 21

*Barouch v. United States DOJ*,
  962 F. Supp. 2d 30 (D.D.C. 2013) ........................................................ 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 20

*Bennett v. Isagenix Int'l LLC*,
  118 F.4th 1120 (9th Cir. 2024) ............................................................ 22

*Bennett v. Spear*,
  520 U.S. 154 (1997) .............................................................................. 16

*Bitar v. U.S. Dep't of Justice*,
  582 F. Supp. 417 (D. Colo. 1983) .......................................................... 3

*Blackie's House of Beef, Inc. v. Castillo*,
  659 F.2d 1211 (D.C. Cir. 1981) ............................................................ 24

*Block v. North Dakota*,
  461 U.S. 273 (1983) ......................................................................... 12, 15

*Cambranis v. Blinken*,
  994 F.3d 457 (5th Cir. 2021) ......................................................... 10, 11, 14

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004) ............................................................ 8, 22

ii

*Compere v. Riordan*,
  368 F. Supp. 3d 164 (D. Mass. 2019)........................................................................ 8

*Doe v. Trustees of Dartmouth Coll.*,
  597 F. Supp. 3d 511 (D.N.H. 2022)..................................................................... 8, 22

*El Badrawi v. Dep't of Homeland Sec.*,
  579 F.Supp.2d 249 (D. Conn. 2008).................................................................. 14, 15

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
  959 F.2d 742 (9th Cir. 1992) .................................................................................. 24

*Fan v. Brewer*,
  No. H–08–3524, 2009 WL 1743824 (S.D. Tex. June 17, 2009) ............................ 19

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ............................................................................................... 10

*Global NAPs, Inc. v. Verizon New England, Inc.*,
  489 F.3d 13 (1st Cir. 2007)..................................................................................... 25

*González–Droz v. González–Colón*,
  660 F.3d 1 (1st Cir. 2011).................................................................................. 18, 19

*Hill v. Air Force*,
  795 F.2d 1067 (D.C. Cir. 1986).............................................................................. 15

*Holistic Candlers and Consumer's Ass'n v. FDA*,
  664 F.3d 940 (D.C. Cir. 2012)................................................................................ 16

*Jimenez-Angeles v. Ashcroft*,
  291 F.3d 594 (9th Cir. 2002) ................................................................................. 21

*Lane v. Pena*,
  518 U.S. 187 (1996) ............................................................................................... 10

*Maine Forest Prods. Council v. Cormier*,
  51 F.4th 1 (1st Cir. 2022)......................................................................................... 8

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ................................................................................... 11, 14, 15

*Mayorga v. Meade*,
  No. 24-CV-22131, 2024 WL 4298815 (S.D. Fla. Sept. 26, 2024) ......................... 21

*Nat'l Ass'n of Home Builders v. Norton*,
  415 F.3d 8 (D.C. Cir. 2005) .......................................................................... 18

*Nat'l Veterans Legal Servs. Program v. United States DOD*,
  990 F.3d 834 (4th Cir. 2021) ........................................................................ 16

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) ................................................................................... 24

*Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*,
  16 F.3d 1032 (9th Cir. 1994) ........................................................................ 25

*Nken v. Holder*,
  556 U.S. 418 (2009) .......................................................................... 2, 22, 24

*Penalbert-Rosa v. Fortuno-Burset*,
  631 F.3d 592 (1st Cir. 2011) ........................................................................ 20

*Quinn v. Stone*,
  978 F.2d 126 (3d Cir. 1992) ......................................................................... 12

*Raven v. Panama Canal Co.*,
  583 F.2d 169 (5th Cir. 1978) ........................................................................ 14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ..................................................................................... 20

*S.M. v. Del. Dep't of Educ.*,
  77 F. Supp. 3d 414 (D. Del. 2015) ............................................................... 19

*Saadulloev v. Garland*,
  No. 3:23-cv-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ............ 21

*Silva v. Gonzales*,
  463 F.3d 68 (1st Cir. 2006) ............................................................................ 3

*Taylor v. U.S. Treas. Dep't*,
  127 F.3d 470 (5th Cir. 1997) ........................................................................ 15

*Textron Inc. v. Comm'r of Internal Revenue*,
  336 F.3d 26 (1st Cir. 2003) .......................................................................... 17

*Together Emps. v. Mass Gen. Brigham Inc.*,
  32 F.4th 82 (1st Cir. 2022) ............................................................................. 8

*Touchstone Rsch. Grp. LLC v. United States,*
   No. 18-CV-3451 (OTW), 2019 WL 4889281 (S.D.N.Y. Oct. 3, 2019)................................... 15

*U.S. Dep't of Homeland Sec.,*
   No. 220CV09654VAPAGRX, 2020 WL 6826200 n.3 (C.D. Cal. Nov. 20, 2020)................... 19

*United States v. Martinez-Fuerte,*
   428 U.S. 543 (1976) ................................................................................................................ 24

*United States v. Sherwood,*
   312 U.S. 584 (1941) ................................................................................................................ 10

*Vaqueria Tres Monjitas, Inc. v. Irizarry,*
   587 F.3d 464 (1st Cir. 2009)................................................................................................ 2, 23

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs,*
   714 F.3d 186 (4th Cir. 2013) ................................................................................................. 16

*Wallace v. Secretary. U.S. Dep't of Homeland Sec.,*
   616 Fed. Appx. 958 (11th Cir. 2015)..................................................................................... 21

*Weinberger v. Romero-Barcelo,*
   456 U.S. 305 (1982) ................................................................................................................ 24

*Westcott v. McHugh,*
   39 F. Supp. 3d 21 (D.D.C. 2014)........................................................................................... 15

*Winter v. Natural Resources Defense Council,*
   555 U.S. 7 (2008) ........................................................................................................... 8, 22, 24

*Yerrapareddypeddireddy v. Albence,*
   No. CV-20-01476-PHX-DWL, 2021 U.S. Dist. LEXIS 221212 (D. Ariz. Nov. 16, 2021) ...... 17

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.,*
   2018 WL 5018487 (W.D. Va. Oct. 16, 2018)...................................................................... 2, 19

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.,*
   No. 7:18cv00189, 2018 U.S. Dist. LEXIS 177991 (W.D. Va. Oct. 15, 2018) ......................... 17

## STATUTES

5 U.S.C. § 552a ............................................................................................................... 5, 6, 14

5 U.S.C. § 552a(a)(2) ............................................................................................................. 14

5 U.S.C. § 552a(a)(5) ........................................................................................................... 5, 6

5 U.S.C. § 552a(b) .................................................................................................... 11

5 U.S.C. § 552a(b)-(d). ............................................................................................... 6

5 U.S.C. § 552a(d) ...................................................................................................... 6

5 U.S.C. § 552a(d)(1) ................................................................................................ 11

5 U.S.C. § 552a(d)(1)-(4) ...................................................................................... 6, 12

5 U.S.C. § 552a(d)(1)-(5) .......................................................................................... 12

5 U.S.C. § 552a(d)(2) ................................................................................................ 12

5 U.S.C. § 552a(d)(3) ................................................................................................ 15

5 U.S.C. § 552a(d)(4) ................................................................................................ 12

5 U.S.C. § 552a(g)(1)(A) ............................................................................................ 6

5 U.S.C. § 552a(g)(1)(B) ............................................................................................ 6

5 U.S.C. § 552a(g)(1)(C) ............................................................................................ 6

5 U.S.C. § 552a(g)(1)(D) ............................................................................................ 6

5 U.S.C. § 552a(g)(1)-(5) .......................................................................................... 12

5 U.S.C. § 552a(2)-(3) ............................................................................................... 15

5 U.S.C. § 702 .................................................................................................... 10, 14

5 U.S.C. § 706 ........................................................................................................... 16

8 U.S.C. § 1103(a) .................................................................................................... 24

8 U.S.C. § 1184(a)(1) ................................................................................................ 24

8 U.S.C. § 1201(i) ..................................................................................................... 17

8 U.S.C. § 1226(e) .................................................................................................... 21

8 U.S.C. § 1229a(a) .................................................................................................. 22

8 U.S.C. § 1229a(c) ................................................................................................... 22

8 U.S.C. § 1229a(c)(5) ................................................................ 22

8 U.S.C. § 1252(a)(5) .................................................................. 22

8 U.S.C. § 1252(b)(9) ................................................................. 22

8 U.S.C. § 1252(g) .......................................................... 2, 20, 21

8 U.S.C. § 1372 ................................................................... *passim*

8 U.S.C. § 1372(a)(1) ................................................................ 4, 18

8 U.S.C. § 1372(c) ......................................................................... 16

## FEDERAL REGULATIONS

8 C.F.R. § 214.1(d) ....................................................................... 17

8 C.F.R. § 214.2(f) ......................................................................... 17

8 C.F.R. § 214.2(f)(1)(i) ................................................................... 3

8 C.F.R. § 214.2(f)(1)(i)(B) ........................................................ 3, 23

8 C.F.R. § 214.2(f)(5) ...................................................................... 4

8 C.F.R. § 214.2(f)(5)(i) ................................................................... 3

8 C.F.R. § 214.3 ............................................................................. 19

8 C.F.R. § 214.4 ............................................................................. 19

8 C.F.R. § 239.3 ...................................................................... 4, 9, 24

## FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ. P. 65(c) ..................................................................... 25

## LEGISLATIVE HISTORY

H.R. 93-1416 .................................................................................. 14

H.R. 16373 ...................................................................................... 13

## PUBLIC LAWS

Pub. L. No. 114-126 ........................................................................................... 6

Pub. L. No. 93-579 ........................................................................................ 5, 13

## FEDERAL REGISTER NOTICES

82 Fed. Reg 7860-61 ......................................................................................... 14

84 Fed. Reg. 3493-94 .................................................................................... 6, 14

86 Fed. Reg. 69663 ............................................................................................. 5

## MISCELLANEOUS

Immigration Customs and Enforcement *ICE, Student and Exchange Visitor Information System,"* available at https://www.ice.gov/sevis/overview (last visited Apr. 16, 2025) ........................... 5

U.S. Dep't of Justice *Source Book on Privacy at 4 (Comm. Print 1976) (hereinafter "Privacy Sourcebook")* available at https://www.justice.gov/opcl/paoverview_sourcebook. ................. 13

United States Citizenship and Immigration Services *USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act,"* available at at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited Apr. 16, 2025)
.................................................................................................................. 4, 9, 24

## INTRODUCTION

Enforcing the immigration laws of the United States is the sovereign prerogative of the Executive Branch. In executing this enforcement mission as it relates to nonimmigrant (or temporary) foreign students, Congress mandated that the Department of Homeland Security ("DHS"), through U.S. Immigration and Customs Enforcement ("ICE") and the Student Exchange Visitor Program ("SEVP") "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to aliens seeking F-1 student status. *See* 8 U.S.C. § 1372. Under this authority, DHS (ICE and SEVP) established the Student Exchange Visitor Information System ("SEVIS"). The Plaintiff in this case, Mr. Liu, who holds F-1 student status, is challenging SEVP's change of his record in the SEVIS database from "active" to "terminated." In doing so, SEVP did not delete Mr. Liu from the database or terminate his F-1 nonimmigrant student status.[1] Moreover, at this time, ICE has not charged Mr. Liu as being deportable. Thus, Mr. Liu suffers from no irreparable injury and his complaint and request for emergency relief from this Court is based upon a faulty premise and his misunderstanding of U.S. immigration laws.

The Court should deny Mr. Liu's request for preliminary injunctive relief because at the threshold, the Court lacks jurisdiction over his claim for correction of an entry in a government database. The Privacy Act applies to Mr. Liu's request for relief and precludes review under the Administrative Procedure Act ("APA"). Moreover, APA review is unavailable here because there is no final agency action before the Court. But even if this was not the case, the Court should still deny Mr. Liu's preliminary injunction request because he cannot satisfy any of the requirements necessary for the extraordinary remedy of a preliminary injunction.

---

[1] Mr. Liu makes no allegation that the State Department has revoked his F visa and concedes he is not challenging any decision to revoke his F visa. *See* Compl., ECF No. 1 at ¶ 10.

1

First, Mr. Liu has no likelihood of success on his Fifth Amendment claim that SEVP's change of his record in SEVIS violates due process because courts have held that an alien has no property interest in a SEVIS record. *See, e.g.*, *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018). Similarly, Mr. Liu has no likelihood of success on his separate Fifth Amendment claim that the "risk of abrupt detention without prior notice" violates his due process rights because Congress, through 8 U.S.C. § 1252(g) has precluded courts from reviewing ICE's prosecutorial decision on whether to commence (or not commence) removal proceedings against an alien.

Second, Mr. Liu has failed to establish any immediate, irreparable injury. Under First Circuit law, this deficiency alone is enough to deny the preliminary injunction motion. Mr. Liu's claim of injury by "possible detention and deportation," Pl.'s Mot. at 10, is not only speculative, but it also "cannot constitute the requisite irreparable injury" necessary for preliminary injunctive relief. *See, e.g., Nken v. Holder*, 556 U.S. 418, 435 (2009). Moreover, Mr. Liu's claim that he will lose "all that makes life worth living," Pl.'s Mot. at 10, because according to him, his "academic studies and career trajectory" will be placed at risk, is at best an exaggeration as he has failed to demonstrate that he is unable to transfer his completed credits and other accomplishments from Dartmouth College to another college or university either in his home country or in another country (*e.g.*, Canada) and complete his Ph.D. program. And, Mr. Liu's assertion that his school's decision to end his stipend puts him in an "extremely difficult financial and academic position," *id*. at 11, cannot constitute an irreparable injury because he fails to indicate the amount of the stipend and why its loss "is so great as to threaten the existence of [the equivalent] of his business," *see Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464, 485 (1st Cir. 2009), when a foundational

2

requirement for eligibility for F-1 student status is demonstration of the ability to independently cover all costs while present in the United States. *See* 8 C.F.R. § 214.2(f)(1)(i)(B).

Finally, the public interest weighs heavily against injunctive relief because the Executive's ability to enforce U.S. immigration laws is not only significant but also a sovereign prerogative.

For these reasons, as set forth below, the Court should deny Mr. Liu's request for a preliminary injunction in its entirety.

## STATUTORY AND REGULATORY FRAMEWORK

### A.    The F-1 Nonimmigrant Student Classification

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status").[2] As relevant here, to be admitted in F-1 status, an applicant must present a Form I-20, issued by a certified school in the student's name; present documentary evidence of financial support; and demonstrate he or she intends to attend the school specified on the student's visa. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a nonimmigrant student must "pursue a full course of study" or "engage in authorized practical training." *Id.* § 214.2(f)(5)(i).

Individuals admitted in F-1 status are permitted to remain in the United States for the duration of status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is

---

[2] To qualify for F-1 nonimmigrant status, a foreign national is required to (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status (a "Form I-20"), issued by the school, and (3) submit a visa application at the U.S. Embassy or Consulate abroad. *See, e.g., Bitar v. U.S. Dep't of Justice*, 582 F. Supp. 417, 418-19 (D. Colo. 1983).

defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). An F-1 student admitted for the duration of status found to have violated his status does not begin to accrue unlawful presence until the day after a request for another immigration benefit is denied by U.S. Citizenship and Immigration Services ("USCIS"), or during removal proceedings, the day after an Immigration Judge enters an order that the alien violated his nonimmigrant status. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited Apr. 17, 2025); *see also* 8 C.F.R. § 239.3.

**B.    The Student and Exchange Visitor Information System (SEVIS)**

In order to enhance the integrity of the immigration system in the wake of the September 11, 2001, terrorist attacks, Congress mandated that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). Under this authority, DHS created SEVIS, "which is a web-based system" that DHS, through the Student Exchange Visitor Program ("SEVP") "uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor

Program sponsors and J-1 visa Exchange Visitor Program participants." *See* "ICE, Student and Exchange Visitor Information System," found online at: https://www.ice.gov/sevis/overview (last visited Apr. 17, 2025). Under 8 U.S.C. § 1372, Congress has provided DHS, through SEVP, with broad authority to administer SEVIS. Inherent in that authority is SEVP's ability to maintain, update and change SEVIS records as needed (*e.g.*, from "active to "terminated"), to carry out the purposes of the program. *See* Watson Decl., ¶¶ 3, 4, attached as Exh. A. Notably, SEVP's termination of an alien's record in SEVIS does not terminate that person's nonimmigrant status in the United States. *Id.* at ¶11. Moreover, the statute does not provide SEVP the authority to terminate an alien's nonimmigrant status by terminating his SEVIS record. *Id*.

In accordance with the Privacy Act of 1974, DHS "modif[ed], rename[d] and reissue[d]" the SEVIS database as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* 86 Fed. Reg. 69663 (Dec. 8, 2021).

## C.    The Privacy Act of 1974

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a (2018), establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. *See* Pub. L. 93–579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes). The Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. *See generally*, 5 U.S.C. § 552a. A system of records is defined by statute as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. 5 U.S.C. § 552a(a)(5). The Privacy Act sets forth agency record-keeping requirements, places restrictions on disclosure of information,

and provides a means for individuals to access their records and seek correction of inaccurate information in those records. *Id.* §§ 552a(b)-(d).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. 5 U.S.C. § 552a(d)(1)-(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of §552a(g)(1)(A). *Id.* at (d)(3).

The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record. *Id.,* § 552a(g)(1). In an action to correct a record, the court can order the agency to make the correction and can assess costs and fees against the United States if the complainant substantially prevails. *Id.* § 552a(g)(2). Actions may also be brought to compel access to a record or for damages in certain instances. *Id.* §§ 552a(g)(1)(B), (g)(1)(C), (g)(1)(D).

The Privacy Act limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* at 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. The countries that have been designated pursuant to that amendment are the United Kingdom and majority of the countries of the European Union. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019).

**FACTS AND PROCEDURAL HISTORY**

Mr. Liu is a national of the People's Republic of China. Compl. (ECF No. 1) ¶ 14. According to Mr. Liu, he first entered the United States in F-1 status in 2016 to pursue his undergraduate studies at Wake Forest University. *See* ECF No. 10-4, Declaration of Xiaotian Liu ("Liu Decl.") at ¶ 3. He completed his undergraduate and master's degrees at Wake Forest, and in September 2023, began his Ph.D. at Dartmouth College. *Id.* ¶¶ 1-14. On April 4, 2025, Dartmouth College informed Mr. Liu that his SEVIS record was terminated. Compl. ¶ 4; *see also* Liu Decl. ¶ 7; Ex. B to Mr. Liu's Motion for PI. According to Dartmouth, the SEVIS database reflected the following for Mr. Liu: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Compl. ¶ 5; *see also* Ex. B. On or about April 8, 2025, the reason for the SEVIS termination was changed to "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ECF No. 10-15.

On April 7, 2025, Mr. Liu filed his complaint. *See* Compl., ECF No. 1. Mr. Liu brings three causes of action. Compl. ¶¶ 49-60. Count I contends that Defendants violated the Due Process Clause of the Fifth Amendment by purportedly terminating Mr. Liu's F-1 student status under the SEVIS system without individualized notice and an opportunity to respond. *Id.* ¶ 51. Count II alleges that Defendants' purported "termination of Mr. Liu's F-1 student status under the SEVIS system is a final agency action" that "violates the Administrative Procedure Act (APA)." *Id.* ¶ 54-55. Count III is styled as a second, separate Fifth Amendment Due Process claim, alleging that, "Mr. Liu is at risk of abrupt detention without prior notice." *Id.* ¶ 60.

On April 7, 2025, Mr. Liu filed a Motion for Temporary Restraining Order ("TRO"). ECF No. 2. On April 9, 2025, the Court held a hearing on the motion and granted the TRO, enjoining

Defendants "from terminating Mr. Liu's F-1 student status under the SEVIS … system," and requiring Defendants "to set aside their termination determination." ECF No. 13. On April 10, 2025, Mr. Liu filed a Motion for a Preliminary Injunction ("PI"). ECF No. 10. On April 11, 2025, in accordance with the Court's Order, Defendants changed Mr. Liu's SEVIS designation back to "active."

## STANDARD OF REVIEW

Preliminary injunctive relief is an extraordinary remedy. *Maine Forest Prods. Council v. Cormier*, 51 F.4th 1, 5 (1st Cir. 2022). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022) (quoting *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008)). To start, without subject matter jurisdiction, a party cannot demonstrate a likelihood of success on the merits of their claim. *Compere v. Riordan*, 368 F. Supp. 3d 164, 171 (D. Mass. 2019). Moreover, the First Circuit has held that "irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief," *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). This means that "if the moving party cannot demonstrate that he is likely to suffer irreparable harm in the absence of a preliminary injunction, the remaining [*Winter*] factors become matters of idle curiosity" *Doe v. Trustees of Dartmouth Coll.*, 597 F. Supp. 3d 511, 513 (D.N.H. 2022) (McCafferty, J.) (citation omitted).

**ARGUMENT**

**I.    THERE IS NO CASE OR CONTROVERSY BEFORE THE COURT BECAUSE SEVP DID NOT TERMINATE MR. LIU'S F-1 NONIMMIGRANT STATUS**

While Mr. Liu asserts a challenge to SEVP's change to his SEVIS record, the ultimate relief he seeks from the Court relates to his F-1 nonimmigrant status. *See* Compl. at Prayer ¶¶ 2-4 (*e.g.*, asking for declaratory and injunctive relief on the "termination of Mr. Liu's F-1 student status" and an order requiring Defendants "to reinstate Mr. Liu's valid F-1 student status"). An alien's SEVIS record is not the same thing as his F-1 nonimmigrant status. As explained in the Watson declaration, changing a data entry field in a SEVIS record to "terminated" (as opposed to initial, active, inactive, or completed) neither deletes the SEVIS record nor terminates the alien's F-1 nonimmigrant status. Watson Decl. ¶¶ 4, 11. SEVIS is a database to monitor and verify certain information about F, M, and J nonimmigrants administered by SEVP. *Id*. ¶ 4. The applicable statute, 8 U.S.C. § 1372, does not provide SEVP with the authority to terminate nonimmigrant status changing a SEVIS record. *Id.* ¶ 11. Indeed, Mr. Liu's own purported expert writes that F-1 nonimmigrant status is held for duration of status (or "D/S") and can only be determined to have ended by USCIS or an Immigration Judge. *See* Pl.'s Ex. N, ECF No. 14 at ¶ 13. *See also* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF    (last visited Apr. 17, 2025); 8 C.F.R. § 239.3.

Here, SEVP "has never claimed" that it terminated Mr. Liu's nonimmigrant status. Watson Decl. ¶ 11. Thus, the entire premise of Mr. Liu's complaint is incorrect, and there is no case or controversy before the Court regarding Mr. Liu's F-1 nonimmigrant status.

## II.    THE GOVERNMENT HAS NOT WAIVED SOVEREIGN IMMUNITY UNDER THE APA FOR MR. LIU'S CHALLENGE TO THE CONTENTS OF HIS SEVIS RECORD

The Court cannot hear Mr. Liu's challenge to the contents of his SEVIS record under the APA because the APA's waiver of sovereign immunity does not extend to such a claim. Rather, Congress established the Privacy Act of 1974 to address claims related to information held in government databases.

The APA's waiver of sovereign immunity is contained in 5 U.S.C. § 702. *Cambranis v. Blinken*, 994 F.3d 457, 462-63 (5th Cir. 2021). Waivers of sovereign immunity must be "unequivocally expressed in statutory text… and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). The scope of this type of waiver is "strictly construed" in the Government's favor. *Id.* "[T]he 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States* v. *Sherwood*, 312 U.S. 584, 586 (1941)). To invoke the waiver, "the plaintiff must identify some agency action affecting him in a specific way, which is the basis of his entitlement for judicial review" and "the plaintiff must show that he has suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute." *Id.* (quotations/citations omitted). However, § 702 also "contains enumerated exceptions that limit the reach of its general waiver" including that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *See id.* at 463, quoting 5 U.S.C. § 702. "According to the Supreme Court, '[t]hat provision prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes.'" *Cambranis*, 994 F.3d

at 463 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S.

209, 215 (2012) (hereinafter "*Patchak*")).

At least one Court has interpreted § 702 and the Supreme Court's decision in *Patchak* to

contain three requirements to trigger the "any other statute" exception of § 702: "(1) the statute

must address the same type of grievance the plaintiff asserts in his suit; (2) the statute must deal

'in particularity' with the claim, and (3) Congress must have intended the statute to afford the

'exclusive remedy' for that type of claim/grievance." *Cambranis*, 994 F.3d at 463 (citing *Patchak*,

567 U.S. at 216)*.* Mr. Liu's complaint refers to "reinstatement of his valid F-1 status under the

SEVIS system." *See, e.g.,* Compl. Prayer ¶ 4. To the extent Mr. Liu seeks to bring an APA claim

for judicial review to amend the status field contained in his SEVIS record, Mr. Liu's claims fail

because the Privacy Act forecloses relief.

***The Privacy Act addresses the same type of grievance.*** The Complaint alleges that Mr. Liu

received notice from Dartmouth College that his "F-1 record in SEVIS has been terminated."

Compl. ¶¶ 5, 6, 45. Mr. Liu acknowledges that SEVIS is a "database." *Id.* ¶ 5. He claims that he is

challenging "DHS's unlawful termination of his F-1 student status under the SEVIS system" and

alleges that changing the status of the record to terminated was the result of a misapplication of

agency regulations. *See id.* ¶¶ 7, 10, 56, 60. Mr. Liu seeks an opportunity to review and rebut the

information in the record. *See id.* Prayer ¶ 3. Congress enacted the Privacy Act to address squarely

this type of grievance. *See* 5 U.S.C. § 552a(b).

The Privacy Act addresses records held in government databases. 5 U.S.C. § 552a(b). It

permits an individual to review agency records, request the agency correct them, appeal to the

agency head if the amendment is denied, and submit a statement of disagreement with the records.

*Id.* § 552a(d)(1) (access); § 552a(d)(2) (amendment); § 552a(d)(3) (appeal to agency head);

§ 552a(d)(4) (statement of disagreement). Once an individual has exhausted his administrative remedies to amend his records, the Privacy Act contains a consent to suit in federal district court. § 552a(d)(3) (exhaustion of administrative remedies); 552a(g)(1)(A) (civil remedies). Thus, the first factor of the *Cambranis* test is met.

*The Privacy Act deals "in particularity" with the asserted claims.* The Privacy Act sets forth the contours of the administrative process an agency must follow when an individual requests a record amendment, including submitting a request, the timeline for an agency response, a requirement that a denial includes the basis for the decision, and an appeal if the request is denied. 5 U.S.C. § 552a(d)(2). The Privacy Act also states that agencies must establish particular procedures for the review and amendment process. *Id.* at § 552a(f); *Quinn v. Stone*, 978 F.2d 126, 137 (3d Cir. 1992) (describing the "detailed set of requirements" for amending a record set forth in the Privacy Act). It provides for judicial review of an agency's failure to amend the records, but only after administrative remedies have been exhausted. 5 U.S.C. §§ 552a(d)(1)-(4). It also defines the class of persons who may sue, the venue where suit may be brought, the standard of review, the statute of limitations, and the available remedies including an order directing the agency to amend a record or to provide access to a record, costs, attorneys fees, and in some cases actual damages. *See* 5 U.S.C. §§ 552a(g)(1)-(5); *see also Block v. North Dakota*, 461 U.S. 273, 286 n.22 (1983) (indicating that "the balance, completeness, and structural integrity" of a statutory provision "belie[s] the contention that it was designed merely to supplement other judicial relief."). Thus, the second factor of the *Cambranis* test is met.

*Congress intended for the Privacy Act to provide the exclusive remedy in these types of challenges.* The completeness of the Privacy Act scheme to view, challenge, and seek amendment of records, and to pursue civil remedies in court if unsuccessful—shows that Congress intended

the Privacy Act to provide the exclusive remedy for claims such as those advanced by Mr. Liu. That conclusion is consistent with the legislative history in which Congress explained that the Privacy Act contained provisions "for the exercise of civil remedies by individuals against the Federal Government through the Federal courts to enforce their rights, with the burden of proof resting on the government." H.R. Report 93-1416 (Oct. 2, 1974) at 4 (*see* Privacy Sourcebook[3] at 297). The House Report further explained that "[t]he section authorizing civil actions by individuals is designed to assure that any individual who has been refused lawful access to his record or information about him in a record or has otherwise been injured by an agency action which was based upon an improperly constituted record, will have a remedy in the Federal District courts." *Id.* at 17 (*see* Privacy Sourcebook at 310). When reconciling the House and Senate versions of the bill, the committee explained the remedies available under the Privacy Act to correct or amend a record, including the applicable standard of proof: "These amendments represent a compromise between the two positions, permitting an individual to seek injunctive relief to correct or amend a record maintained by an agency. In a suit for damages, … the standard for recovery of damages was reduced to 'willful or intentional' action by an agency." *See* Privacy Sourcebook at 862 (citing from the Congressional Record—Senate, Dec 17, 1974— Senate Considers House Substitute of Text of H.R. 16373 to S. 3418 and Adopts Compromise Amendments Identical to those Considered in House).

Thus, all three elements of the *Cambranis* test are met by the Privacy Act, and it qualifies as "any other statute" under § 702.

---

[3] S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., Legislative History of the Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy at 4 (Comm. Print 1976) (hereinafter "Privacy Sourcebook") *available at* https://www.justice.gov/opcl/paoverview_sourcebook.

***The Privacy Act expressly precludes the relief Mr. Liu seeks.*** The sovereign immunity limitation of § 702 requires not just that another statute addresses the particular claims asserted, but also that it "forbids the relief sought." 5 U.S.C. § 702. That is true here. Mr. Liu is a Chinese national. Compl. ¶ 14. As such, he does not qualify as an "individual" under the Privacy Act. Congress intentionally restricted *who* may challenge purportedly erroneous records under the Act to U.S. citizens and Lawful Permanent Residents. 5 U.S.C. § 552a(a)(2) (defining "individual"); *see* H.R. 93-1416 at 11 (Privacy Sourcebook at 304) (explaining the law "would not affect any other foreign nationals."). Indeed, Congress explicitly acknowledged that foreign nationals are barred from the Privacy Act's remedial measures by passing the Judicial Redress Act of 2015, which extended certain remedial measures of the Privacy Act to citizens of designated countries. 5 U.S.C. § 552a note. The Attorney General twice designated European countries whose citizens could take advantage of such redress. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019). Congress and the Attorney General have not extended that designation to China, thus barring Mr. Liu from the relief he seeks. *Raven v. Panama Canal Co*., 583 F.2d 169, 170 (5th Cir. 1978) (applying plain meaning to definition of individual in § 552a(a)(2) and holding that "since the plaintiff is a Panamanian citizen and thus not an 'individual' within the meaning of the Privacy Act, she is not entitled to compel access under its authority."); *see also El Badrawi v. Dep't of Homeland Sec.*, 579 F.Supp.2d 249, 279 n. 35 (D. Conn. 2008) ("the Privacy Act implicitly (if not explicitly) forbids nonresident aliens … from suing federal agencies to correct their records.").

Thus, the Privacy Act triggers the exception of § 702 of the APA that sovereign immunity is not waived if "any other statute explicitly or impliedly forbids the relief sought." 5 U.S.C. § 702; *Patchak*, 567 U.S. at 216; *Cambranis,* 994 F.3d at 462-63. "[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy—including its exceptions—to be

exclusive, that is the end of the matter; the APA does not undo the judgment." *Patchak*, 567 U.S. at 216 (alteration in original, quotations/citations omitted); *see also Block*, 461 U.S. at 286 n.22. As the Supreme Court noted, "[i]t would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Block*, 461 U.S. at 285. Other courts have reached the same conclusion in APA suits challenging government records. *See El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 279 n.35 (D. Conn. 2008) (APA's waiver of sovereign immunity did not extend to actions to correct government records); *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014) ("a plaintiff cannot bring an APA claim to obtain relief for an alleged Privacy Act violation"); *Touchstone Rsch. Grp. LLC v. United States,* No. 18-CV-3451 (OTW), 2019 WL 4889281, at *5-6 (S.D.N.Y. Oct. 3, 2019) (dismissing APA claims because APA's general grant of review was not intended to duplicate existing procedures of Privacy Act). Because the APA's waiver of sovereign immunity does not extend to Mr. Liu's claims, the Court lacks jurisdiction over Counts I and II of the Complaint.

Additionally, even if Mr. Liu qualified as an "individual" under the Privacy Act, his claim here would still be foreclosed because he has not exhausted the mandatory administrative remedies as required by statute before requesting an amendment to records under §§ 552a(2)-(3). *See* 5 U.S.C. § 552a(d)(3); *Taylor v. U.S. Treas. Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (per curiam) (statutory mandate to exhaust administrative remedies is jurisdictional); *Hill v. Air Force,* 795 F.2d 1067, 1069 (D.C. Cir. 1986) (plaintiff seeking to amend inaccurate records must first exhaust); *Barouch v. United States DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (exhaustion requirement of Privacy Act is jurisdictional).

III.    **SEVP'S CHANGE TO MR. LIU'S SEVIS RECORD IS NOT A FINAL AGENCY ACTION**

Even if the Privacy Act does not preclude APA review of Mr. Liu's claims, he still fails to assert a viable claim under the APA because SEVP's change to Mr. Liu's SEVIS record is not a final agency action.

A final agency action is required for APA review. 5 U.S.C. § 706. An action is "final" when it (1) "mark[s] the consummation of the agency's decision-making process," and (2) is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). "Final agency action 'is a term of art that does not include all [agency] conduct such as, for example, constructing a building, operating a program, or performing a contract,' but instead refers to an 'agency's [final] *determination* of rights and obligations whether by rule, order, license, sanction, relief, or similar action.'" *Nat'l Veterans Legal Servs. Program v. United States DOD*, 990 F.3d 834, 839 (4th Cir. 2021) quoting *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citing *Bennett,* 520 U.S. at 177-78). A challenged action fails the first prong if it is "of a merely tentative or interlocutory nature" and does not express an agency's "unequivocal position." *Holistic Candlers and Consumer's Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (citations omitted). A non-final action contemplates further administrative consideration or modification prior to the agency's adjudication of rights or imposition of obligations. *See id.* at 945.

SEVP's change to Mr. Liu's SEVIS record fails to meet both factors of the final agency action test. First, the change does not mark the consummation of any decision-making process. SEVIS records are "an electronic means to monitor and verify" certain information about a student nonimmigrant. *See* Watson Decl. ¶ 4; 8 U.S.C. § 1372(c). And changing a SEVIS record to "terminated" does not terminate an alien's nonimmigrant status in the United States. Watson Decl.

¶ 11. Thus, the SEVIS record—indicating initial, active, inactive, completed or terminated—does not reflect the consummation of any agency decision-making process regarding the student's nonimmigrant status.

Second, legal consequences do not flow from the mere changing of a SEVIS record to terminated. As indicated, it does not terminate the student's nonimmigrant status or result in the revocation of a nonimmigrant visa. Watson Decl. ¶ 11. Rather, it is record keeping action conducted under DHS's authority to collect information and maintain records under 8 U.S.C. § 1372. *See Zhao*, 2018 WL 5018487, at *6 (describing SEVIS record modification by school's DSO as "clerical duty performed as a preliminary matter"); *see also Yerrapareddypeddireddy v. Albence,* No. CV-20-01476-PHX-DWL, 2021 U.S. Dist. LEXIS 221212, at *22 (D. Ariz. Nov. 16, 2021) (similar as to ICE's termination of a SEVIS record).

Mr. Liu alleges that DHS lacks the authority to change a SEVIS record under 8 C.F.R. § 214.1(d). *See* Compl. At ¶¶ 10, 26, 55, 56. He is incorrect. Part 214.1(d) relates to the termination of an alien's nonimmigrant status—not his SEVIS record. *See* 8 C.F.R. § 214.1(d) ("the nonimmigrant status of an alien shall be terminated by…"). And as SEVP has indicated, it "has never claimed that it had terminated [Mr. Liu's] nonimmigrant status. Watson Decl. ¶ 11. Moreover, § 214.1(d) provides three mandatory scenarios in which nonimmigrant status "shall" be terminated without review. *See* 8 C.F.R. § 214.1(d). It does not, however, suggest that nonimmigrant status cannot be terminated for other reasons. *See id.* The plain text of the regulation controls. *Textron Inc. v. Comm'r of Internal Revenue*, 336 F.3d 26, 31 (1st Cir. 2003). Part 214.1(d) provides reasons for terminating nonimmigrant status in addition to reasons provided elsewhere in the applicable statutory provisions and regulations. *See, e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f). But here, Congress tasked DHS with the broad authority to "develop and conduct a

17

program" to record information about nonimmigrant students in an electronic database. 8 U.S.C. § 1372(a)(1). DHS can update, change or modify the records for that program because of its congressionally mandated authority to "conduct" the SEVIS program. *Id.*

Mr. Liu also alleges that SEVP's change to his SEVIS record is affecting his ability to work at the college, but he fails to provide any evidence that legal consequences flow from the change in his SEVIS record. Instead, Mr. Liu asserts his own fears and decisions by the college, neither of which are sufficient to establish that the SEVIS record change constitutes a final agency action. *See, e.g., Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15-16 (D.C. Cir. 2005) (rejecting assertion that voluntary compliance with agency guidance is a legal consequence).

Thus, Mr. Liu fails to assert a viable claim under the APA because SEVP's change to his SEVIS record is not a final agency action.

## IV.    MR. LIU CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS DUE PROCESS CLAIM IN COUNT I

Mr. Liu asserts that the "termination of [his] F-1 student status under the SEVIS system … violates the Due Process Clause of the Fifth Amendment." Pl.'s Mot. at 6. But as indicated, SEVP changed Mr. Liu's SEVIS record to "terminated" and did not terminate his nonimmigrant status. Watson Decl. ¶ 11. Thus, to the extent that Mr. Liu is asserting that SEVP's change to his SEVIS record violates due process, he has no likelihood of success on the merits of that claim. This is because courts have held that there is no property interest in a SEVIS record.

In order to establish a procedural due process claim under the Fifth Amendment, "a plaintiff must (1) 'identify a protected liberty or property interest,' and (2) 'allege that the defendants ... deprived [him] of that interest without constitutionally adequate process.'" *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 34 (1st Cir. 2011) (quoting *González–Droz v. González–Colón*, 660 F.3d 1, 13 (1st Cir. 2011)). Mr. Liu has not, and cannot, provide any authority to establish a constitutionally

protected interest in a SEVIS record. This is because the opposite is true—courts have held that no such interest exists. *See, e.g., Zhao*, 2018 WL 5018487, at *6 (holding that plaintiff did not have a property interest in his SEVIS record that would implicate due process).[4]

In *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *2-3 (E.D. Mo. Aug. 6, 2008), the court analyzed 8 C.F.R. §§ 214.3 and 214.4 and rejected the plaintiff's claim that the regulations created a property interest that could form the basis for a constitutional claim. *See Bakhtieri*, at *2. In doing so, the court concluded that the regulations did not indicate a congressional intent to benefit a class of nonimmigrants or create a private right of action that could give rise to a federal right. *Id.* at *3. *Bakhtieri* applies here to the claims by Mr. Liu.

Based on this, any claim by Mr. Liu that he has a constitutionally protected property interest in a SEVIS record fails. Accordingly, Mr. Liu fails to demonstrate a likelihood of success on the merits of his due process claim in Count I of the complaint.

## V.    MR. LIU CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS OF COUNT III.

Mr. Liu has no likelihood of success on the merits of Count III of his complaint. In that count, Mr. Liu advances a speculative, cursory argument couched in terms of the Fifth Amendment that the termination of his SEVIS record puts him "at risk of abrupt detention without prior notice." Compl. at ¶ 60. To this end, Mr. Liu requests that this Court "[e]njoin Defendants from detaining [him] pending the instant case." *Id.* at p. 14, ¶ 5. Notably, at this time, DHS has not charged Mr.

---

[4] *See also S.M. v. Del. Dep't of Educ.*, 77 F. Supp. 3d 414, 419 (D. Del. 2015) (holding that there is no protected property interest for students wishing to continue attending their same school); *Fan v. Brewer*, No. H–08–3524, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009) (updating student's SEVIS record to reflect changed academic status did not violate any constitutional right); *Doe 1 v. U.S. Dep't of Homeland Sec.*, No. 220CV09654VAPAGRX, 2020 WL 6826200, at *4 n.3 (C.D. Cal. Nov. 20, 2020), *aff'd sub nom. Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849 (9th Cir. 2021) ("Although Plaintiffs do not allege in the Complaint or Motion a property interest in their SEVIS status, it is equally unlikely that one exists.").

Liu as being deportable such that he will be placed in detention. Nor has Mr. Liu pled any facts that would lead this Court to believe that Defendants imminently intend to detain him or initiate removal proceedings against him at this time, let alone without due process of law. His claims amount to little more than "'legal conclusion[s] couched as ... factual allegation[s],'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and are "so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 557 n.5). To the extent that Mr. Liu requests that the Court order Defendants to refrain from initiating removal proceedings against him, this claim similarly fails.

Even if Mr. Liu meaningfully pled and addressed these claims, he cannot demonstrate that this Court has jurisdiction to review them. The opposite is true. The INA divests this Court of jurisdiction over discretionary decisions concerning DHS's decision to initiate removal proceedings. 8 U.S.C. § 1252(g). Moreover, the INA explicitly bars judicial review of the discretionary decision over whether or not to detain an alien that is placed in removal proceedings. *Id.* § 1226. Therefore, this Court lacks authority to provide Mr. Liu with the relief he requests based on his speculative assertions.

At the threshold, § 1252(g) applies to "three discrete actions that the [Secretary of Homeland Security] may take: her 'decision or action' to '*commence* removal proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). The Supreme Court determined that "Section 1252(g) was directed against … attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n.9. This includes the Executive's "discretion to abandon the endeavor" without judicial interference. *Id.* at 483-84; *see also Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001).

As a result, § 1252(g) prohibits district courts from hearing challenges to decisions and actions about whether, when, and where to commence removal proceedings. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 598-99 (9th Cir. 2002). Accordingly, any request by Mr. Liu that the Court prohibit Defendants from initiating removal proceedings against him fails because it impedes upon the Secretary of Homeland Security's discretion to commence removal proceedings.

Moreover, 8 U.S.C. § 1226(e) provides that that: "[t]he [Secretary of Homeland Security's] discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the [Secretary] under this section regarding the detention of any alien or the revocation or denial of bond or parole." *See, e.g.*, *Mayorga v. Meade*, No. 24-CV-22131, 2024 WL 4298815, at *7 (S.D. Fla. Sept. 26, 2024).

Similarly, § 1252(g) independently bars relief. If Defendants decide at some point to charge Mr. Liu as deportable and thereafter detain him, such an action would arise "from the decision [and] action" to "commence proceedings." 8 U.S.C. § 1252(g). This includes reviewing the method by which the Secretary of Homeland Security chooses to commence removal proceedings. *See*, *e.g.*, *Wallace v. Secretary. U.S. Dep't of Homeland Sec.*, 616 Fed. Appx. 958, 961 (11th Cir. 2015) (affirming the district court's holding that it lacked subject matter jurisdiction over "challenges to the government's initiation of removal proceedings."); *see also Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) (similar); *Saadulloev v. Garland*, No. 3:23-cv-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest Saadulloev on April 4, 2023, clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g)."). Accordingly, this Court has no jurisdiction to review the discretionary decision to detain a noncitizen who has been charged as removable (which notably, Mr. Liu has not been).

In sum, even if Mr. Liu properly pled and developed these claims, he cannot demonstrate that he is likely to succeed on the merits of such claims where this Court has no jurisdiction to review DHS's discretionary decision to commence proceedings and subsequently detain an alien based on the commencement of those proceedings. Congress has insulated such discretionary decisions from judicial review.[5]

## VI.    MR. LIU CANNOT ESTABLISH IRREPARABLE HARM.

Irreparable harm must be likely absent an injunction, not merely possible. *Winter*, 555 U.S. at 22. And as the First Circuit has held, "irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief," *Charlesbank Equity Fund II*, 370 F.3d at 162. Here, Mr. Liu has failed to establish any irreparable harm. The Court can and should deny his preliminary injunction motion on this basis alone. *See Trustees of Dartmouth Coll.*, 597 F. Supp. 3d at 513.

Mr. Liu asserts that he is irreparably injured because he fears deportation. Pl.'s Mot. at 10. But any claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken*, 556 U.S. at 435 ("[T]he burden of removal alone cannot constitute the requisite irreparable injury."). Moreover, Mr. Liu is free to depart the United States on his own. *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024)*.* Thus a fear of deportation is not an irreparable injury, particularly so here, where Mr. Liu has not demonstrated that the commencement of removal proceedings against him are imminent.

Mr. Liu also asserts that he is irreparably injured because he will lose "all that makes life worth living," because according to him, his "academic studies and career trajectory" will be

---

[5] If placed in removal proceedings, an Immigration Judge will determine whether Mr. Liu is removable as charged. 8 U.S.C. §§ 1229a(a), (c). Mr. Liu can then appeal to the Board of Immigration Appeals, *id.* § 1229a(c)(5), and if unsuccessful, can obtain Article III judicial review by filing a petition for review with the court of appeals, and at this time, may raise constitutional claims and other claims connected to detention and/or removability. *Id.* § 1252(a)(5), (b)(9).

placed at risk. Pl.'s Mot. at 10. But Mr. Liu has failed to demonstrate that he is precluded from transferring his completed credits in his Ph.D. program while at Dartmouth College to another college or university either in his home country or in another country (*e.g.*, Canada) and completing his program. In fact, Mr. Liu concedes that at one point he delayed his graduate level studies in the United States and instead pursued research in China, which was published. *See* Compl. ¶ 40. Moreover, any claim by Mr. Liu that an inability to complete a Ph. D. program at Dartmouth results in lost tuition money is not a claim at all—as he received knowledge and credit during his program in exchange for the monies spent to attend Darthmouth.

Further, Mr. Liu's assertion that his school's decision to end his stipend puts him in an "extremely difficult financial and academic position," *id*. at 11, cannot constitute an irreparable injury because he fails to indicate the amount of the stipend and why its loss "is so great as to threaten the existence of [the equivalent] of his business," *see Vaqueria Tres Monjitas, Inc.,* 587 F.3d at 485, when a foundational requirement for eligibility for F-1 student status is demonstration of the ability to independently cover all costs while present in the United States. *See* 8 C.F.R. § 214.2(f)(1)(i)(B).

Finally, Mr. Liu's assertion that "this termination will likely result in the accrual of out of status daily" is not an irreparable injury because he is still in F-1 nonimmigrant status, *see* Watson Decl. ¶ 11, and it is an incorrect statement because F-1 students admitted for the duration of status (or "D/S") begin to accrue unlawful presence only after USCIS or an Immigration Judge has taken administrative action against them. *See* USCIS Memorandum on  May 6, 2009, "Consolidation of Guidance  Concerning  Unlawful  Presence  for  Purposes  of  Section  212(a)(9)(B)(i)  and 212(a)(9)(C)(i)(1)        of        the        Act,"        found        online        at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF        (last

visited Apr. 17, 2025); *see also* 8 C.F.R. § 239.3.

Accordingly, Mr. Liu has failed to establish any irreparable harm.

## VII.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR THE GOVERNMENT

The balance of equities and public interest factors "merge when the Government is the opposing party." *See Nken*, 556 U.S. at 435 (2009). A court "'should pay particular regard for the public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, this factor weighs heavily in the Government's favor. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 750 (9th Cir. 1992). And the public interest in enforcement of United States immigration laws is significant. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981).

Congress has instilled in the Secretary of Homeland Security significant authority to administer and enforce U.S. immigration laws, including those governing the conditions of admission of foreign students. *See* 8 U.S.C. §§ 1103(a), 1184(a)(1). And directly applicable here, Congress has mandated that DHS develop and administer a "[p]rogram to collect information relating to nonimmigrant foreign students." *See* 8 U.S.C. § 1372. Any order that enjoins a governmental entity from enforcing actions taken pursuant to statutes enacted by the duly elected representatives of the people constitutes an irreparable injury that weighs heavily against the entry of injunctive relief. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). Granting Mr. Liu with the extraordinary relief that he seeks will effectively undermine DHS's authority to enforce the provisions of the Immigration and Nationality Act relating to the Department's ability to update and maintain the information in SEVIS and, as such, to change

SEVIS record status to "terminated" as needed, in order to carry out the purposes of the program. The public interest would not be served by the Court commandeering the authority of the agency.

## VIII.   THE COURT SHOULD REQUIRE MR. LIU TO POST A BOND

Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Global NAPs, Inc. v. Verizon New England, Inc.,* 489 F.3d 13, 20-21 (1st Cir. 2007). A bond posted for a preliminary injunction is viewed as a contract in which "the court and Mr. Liu 'agree' to the bond amount as the 'price' of a wrongful injunction." *Global NAPs, Inc.*, 489 F.3d at 21 n. 5 (internal citation omitted). As a result of the posting of the bond, a presumption arises that damages will be awarded from those posted bond amounts in order for defendants "to receive compensation for their damages in cases where it is later determined that a party was wrongfully enjoined." *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc*., 16 F.3d 1032, 1036 (9th Cir. 1994); *see also Global NAPs, Inc.*, 489 F.3d at 23.

The risk of harm here is not insubstantial, and if the Court grants preliminary injunctive relief, Defendants respectfully renew their request that the Court require that Mr. Liu post security during the pendency of the Court's Order, in the event it is later determined that Defendants were wrongfully enjoined.

## CONCLUSION

For these reasons, the Court should deny Mr. Liu's request for a preliminary injunction in its entirety.

//

DATE:  April 17, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW ENSIGN
Deputy Assistant Attorney General

ALESSANDRA FASO
ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsels

By: *s/ Glenn M. Girdharry*
GLENN M. GIRDHARRY
Assistant Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation and Appeals
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4807
Email: glenn.girdharry@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on April 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

SangYeob Kim
Chelsea Eddy
Gilles R. Bissonnette
Henry Klementowicz
American Civil Liberties Union of New Hampshire
18 Low Ave
Concord, NH 03301
603 224-5591
SangYeob@aclu-nh.org
chelsea@aclu-nh.org
Gilles@aclu-nh.org
henry@aclu-nh.org

Ronald L. Abramson
Shaheen & Gordon PA
1155 Elm Street
Suite 300
Manchester, NH 03101
603-792-8472
rabramson@shaheengordon.com

*s/ Glenn M. Girdharry*
GLENN M. GIRDHARRY
Assistant Director
United States Department of Justice
Civil Division