UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Xiaotian Liu

       v.                                    Case No. 25-cv-133-SE
                                                Opinion No. 2025 DNH 057
Kristi Noem et al.


**O R D E R**

On April 7, 2025, Plaintiff Xiaotian Liu brought suit against Kristi Noem, the Secretary of the Department of Homeland Security (DHS), and Todd Lyons, the Acting Director of Immigration and Customs Enforcement (ICE), alleging that DHS unlawfully terminated his F-1 student status in the Student and Exchange Visitor (SEVIS) system. He alleges, among other things, that DHS violated his due process rights under the Fifth Amendment and violated the Administrative Procedure Act when it terminated his status in the system. Before the court at this juncture is Liu's motion for a preliminary injunction "(i) enjoining Defendants from terminating Plaintiff's F-1 student status under the Student and Exchange Visitor (SEVIS) system and (ii) requiring Defendants to set aside their termination determination." Doc. no. 10 at 1.

With his complaint, Liu filed a motion for a temporary restraining order, requesting a TRO providing the same relief he now requests in the form of a preliminary injunction. The court held two hearings on Liu's motion, during which counsel for Liu and the defendants appeared. Although the defendants were given notice and an opportunity to be heard, the defendants' counsel acknowledged at the latter hearing that he had not had adequate time to investigate certain of Liu's factual allegations or evaluate properly the legal bases on which Liu's motion rested. Therefore, the court construed Liu's motion as a request for the provisional

remedy of a TRO with notice, which essentially sought to avoid irreparable harm until the defendants were able to review the factual record and develop their legal arguments sufficiently to address the request for preliminary relief.

The court granted Liu's motion, enjoining the defendants from terminating Liu's F-1 student status under the SEVIS system and requiring them to set aside their termination determination. Liu immediately filed the present motion for a preliminary injunction and the court ordered the parties to meet and confer regarding an appropriate briefing and argument schedule for the preliminary injunction hearing. The parties agreed on a schedule and submitted additional filings related to the motion. The court held a hearing on Liu's motion on April 22, 2025. At the conclusion of the hearing, the court extended the TRO until April 25, 2025, to allow it time to consider fully the arguments offered.

On April 25, 2025, counsel for the defendants confirmed that ICE had announced a new policy generally applicable to F-1 nonimmigrant students and their SEVIS records. He could not, however, confirm that the new policy would apply to Liu or that Liu's student status and SEVIS record would be active under the new policy. The court further extended the TRO until April 29, 2025, to give the parties an opportunity to determine whether the ICE policy affected this case.

On April 29, 2025, Liu filed an addendum to his preliminary injunction motion in which he asserts that resolution of his motion remains necessary. Doc. no. 23. He offers three reasons. First, the defendants have not confirmed that ICE's new policy regarding F-1 nonimmigrant students and their SEVIS records applies to Liu. Second, even if they did, Liu still faces irreparable harm absent injunctive relief because the defendants have argued in this case that a student's SEVIS record does not have any bearing on his actual F-1 student status. And third, the

voluntary cessation doctrine shows that he still faces irreparable harm regardless of ICE's new policy.

The defendants have indicated an intention to respond to Liu's addendum but have not yet responded as of the time of this order. The court would be remiss if it failed to acknowledge the uncertainty surrounding the record before the court as it pertains to Liu's preliminary injunction motion. As discussed further below, since Liu filed this action: (1) DHS has changed its proffered reason for terminating Liu's F-1 student status in the SEVIS system, (2) the defendants have argued that the web-based system which has the purpose of accurately reflecting an international student's F-1 status is, in effect, meaningless because it is wholly divorced from a student's actual F-1 status, and (3) ICE has announced a new policy generally applicable to F-1 nonimmigrant students and their SEVIS records, which the defendants have not yet been able to confirm applies to Liu. This constantly shifting ground has made it difficult to weigh the defendants' arguments in opposing preliminary relief. The court would prefer to grant the defendants additional time to respond in the hope that this decision could rest on a more definitive record or that the parties could come to a temporary resolution on Liu's request for preliminary relief. Nevertheless, the court is loath to extend the TRO again, a remedy designed to provide relief for an extremely short duration. The court therefore analyzes Liu's motion for a preliminary injunction based on the current record and may very well need to reconsider its analysis or the relief granted herein in light of new information or argument. If appropriate, the defendants are free to file for reconsideration.

Background

I.      F-1 and SEVIS[1]

The Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(F), permits noncitizens to

enroll in government-approved academic institutions as F-1 nonimmigrant students. See 8 C.F.R.

§ 214.1(a)(2). Only academic institutions that have obtained formal approval from DHS can

sponsor F-1 students. See id. § 214.3. The Designated School Official (DSO) at each school

sponsoring F-1 students monitors, advises, and oversees the students attending that school,

including updating and maintaining certain records. In order to enter the country, an admitted

international student must secure an F-1 nonimmigrant visa from the United States Department

of State, though the visa does not govern how long an F-1 student may stay in the United States.

When the student enters the United States, the student is granted F-1 student status and is

permitted to remain in the United States for the duration of status as long as the student continues

to meet the requirements established by the regulations governing the student's visa

classification in 8 C.F.R. § 214.2(f). "Duration of status" is defined, in general, as "the time

during which an F-1 student is pursuing a full course of study at an educational institution

certified [ ] for attendance by foreign students, or engaging in authorized practical training

following completion of studies[.]" Id. § 214.2(f)(5)(i).

ICE, a subagency of DHS, is responsible for the Student and Exchange Visitor Program

(SEVP), which keeps records on F-1 students. See 8 U.S.C. §§ 1372(a), (c) (requiring program to

---

[1] The following tracks, with some alterations, both the content and language of the
thorough overview provided in Madan B K v. Noem, Case No. 1:25-cv-419, 2025 WL 1171572,
at *5 (W.D. Mich. Apr. 23, 2025).

collect information). SEVP manages the SEVIS system, "the web-based system that [DHS] uses to maintain information regarding: . . . F-1 . . . students studying in the United States[.]"[2]

F-1 students fail to maintain their status when they do not meet certain regulatory requirements, such as failing to maintain a full course of study without prior approval or other violations of the requirements set forth in the Code of Federal Regulations at 8 C.F.R. § 214.2(f). DSOs at the students' schools are required to report to SEVP, via SEVIS, when a student fails to maintain status. 8 C.F.R. § 214.3(g)(2).

F-1 students are also subject to the requirements for "maintenance of status" set forth in 8 C.F.R. § 214.1 that apply to several nonimmigrant classes, including F-1 students. These requirements include "obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed." Id. § 214.1(g). Section 214.1(g) adds that a "nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status[.]" Id.

Further, an agency may terminate a student's F-1 status for the reasons stated in § 214.1(d). That section provides that "[w]ithin the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated [1] by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; [2] by the introduction of a private bill to confer permanent resident status on such alien; or, [3] pursuant to notification

---

[2] About SEVIS, Department of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited April 29, 2025).

in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."
Id. § 214.1(d).

An F-1 student who fails to maintain status must leave immediately or seek reinstatement
and is not given a grace period to prepare for departure. See id. § 214.2(f)(5)(iv) ("An F-1
student who has completed a course of study and any authorized practical training following
completion of studies will be allowed an additional 60-day period to prepare for departure from
the United States or to transfer in accordance with paragraph (f)(8) of this section . . . . However,
an F-1 student who fails to maintain a full course of study without the approval of the DSO or
otherwise fails to maintain status is not eligible for an additional period for departure.").

While a student may seek reinstatement of his status in SEVIS, a student is not required
to do so. Under the reinstatement guidelines, United States Citizenship and Immigration Services
(USCIS) may consider reinstating, but is not required to reinstate, a student who demonstrates
among other things that he "has not been out of [valid F-1] status for more than 5 months at the
time of filing the request for reinstatement" or that "the failure to file within the 5 month period
was the result of exceptional circumstances and that the student filed the request for
reinstatement as promptly as possible under these exceptional circumstances." Id. §
214.2(f)(16)(i)(A). If USCIS does not reinstate the student's status, the student may not appeal
that decision. Id. § 214.2(f)(16)(ii).


II.    Liu's F-1 Status

Liu is a 26-year-old student at Dartmouth College who has been pursuing a Ph.D. in
computer science since September 2023. Liu is a citizen and national of the People's
Republic of China. He first came to the United States in August 2016 as an F-1 student to pursue

an undergraduate program at Wake Forest University. He graduated with a Bachelor of Science in Mathematics and Computer Science in May 2020. That September, he continued his studies at Wake Forest to pursue a Masters in computer science.

In May 2021, Liu returned to China to renew his F-1 visa, but the application went into administrative processing. Due to the extended visa application process and the ongoing COVID-19 pandemic, he decided to take a gap semester with the approval of Wake Forest. In late September 2021, after successfully receiving his renewed F-1 visa, Liu informed several Wake Forest administrators, including his academic advisor, the Computer Science department chair, and the Computer Science department administrator, that he intended to return to the United States for the Spring 2022 semester.

Although Liu submitted a detailed graduation plan, he was unaware that he also needed to contact Wake Forest's DSO, who was in charge of updating his F-1 status, to request the reinstatement of F-1 student status in the SEVIS system. Therefore, his SEVIS status remained inactive in the system. On January 2, 2022, Liu arrived at the Detroit Metropolitan Wayne County Airport. U.S. Customs and Border Patrol (CBP) officers took him for secondary inspection. During that inspection, Liu was able to connect a CBP officer with Liu's department chair at Wake Forest. The officer confirmed Liu's student status but was unable to approve his entry without an active SEVIS record. The Wake Forest DSO proposed granting temporary entry while reactivation paperwork was processed, but CBP declined the request. Liu spent the night at the CBP facility and returned to China the next day.

Due to China's 28-day mandatory quarantine, Liu applied for another gap semester and began researching computer science with other researchers in China. Liu returned to Wake

Forest on July 23, 2022, to resume his studies. He graduated with a Master of Science in Computer Science in May 2023.

In September 2023, Liu began his Ph.D. program in Computer Science at Dartmouth College. He returned to China in June 2024 for a routine F-1 visa renewal and came back to the United States in August 2024 to continue his doctoral studies without any issues. Most recently, in December 2024, Liu traveled to Vancouver, Canada, to attend an academic conference and returned without any issues.

On April 4, 2025, Dartmouth informed Liu via email that his F-1 student status in the SEVIS system was terminated. According to the email, Dartmouth "discovered this evening that your F-1 record in SEVIS has been terminated by the Department of Homeland Security." Doc. no. 10-5 at 2. Dartmouth explained that the notation in Liu's SEVIS record read: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Doc. no. 10-5 at 2.

On April 8, 2025, after Liu filed this lawsuit, Dartmouth notified Liu that his SEVIS termination record had changed to: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Doc. no. 10-15 at 2. Liu submitted evidence that he has not committed any crime, and the defendants do not contend otherwise. Further, the defendants represent that Liu's visa has not been revoked.

For obvious reasons, most notably as the defendants admitted at the hearing that SEVIS's purpose is to reflect accurately information regarding SEVP schools and F-1 students, both Liu and Dartmouth have interpreted DHS's termination of Liu's F-1 status in SEVIS to mean that

DHS terminated his actual F-1 status.[3] That termination is having significant consequences for Liu and will continue to do so in the near future. Specifically, without F-1 student status Liu is no longer authorized to work as a research assistant or receive his stipend from his Ph.D. program. Anything more than a minor delay in Liu's progression with his research will affect his ability to complete his studies and obtain a Ph.D. In addition, Liu fears he may be at risk of immigration detention and deportation, and he may be accruing time out of F-1 student status, which may make it more difficult or impossible to reinstate his status in the future.

### Standard of Review

"'A preliminary injunction is an extraordinary remedy never awarded as of right.'" Capen v. Campbell, --- F.4th ---, 2025 WL 1135269, at *4 (1st Cir. Apr. 17, 2025) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)). "In determining whether to grant a preliminary injunction, the district court must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Id. (quotations omitted). "The first of these factors is a necessary condition: If the movant fails to demonstrate a likelihood of success on the merits, the remaining elements are of little consequence." Id. (quotations omitted). "[A] court's conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes."

---

[3] As discussed further below, the defendants dispute the implications of DHS's termination of Liu's F-1 status in SEVIS. That dispute is at the heart of the defendants' objection to Liu's preliminary injunction motion.

Id. (quotations omitted). When, as here, the defendants are government officials sued in their

official capacities, the balance of the hardships and the public interest factors merge. Does 1-6 v.

Mills, 16 F.4th 20, 37 (1st Cir. 2021).


Discussion

Liu requests a preliminary injunction "(i) enjoining Defendants from terminating

Plaintiff's F-1 student status under the Student and Exchange Visitor (SEVIS) system, and (ii)

requiring Defendants to set aside their termination determination." Doc. no. 10 at 1. The

defendants object, arguing that Liu cannot show that any of the four preliminary injunction

factors weighs in his favor.


I.    F-1 Student Status v. F-1 Student Record in SEVIS

At bottom, the defendants' arguments on each factor under consideration turn on the

answer to a seemingly straightforward question: What does Liu challenge in this case? On the

face of Liu's pleadings, the answer seems obvious; Liu challenges DHS's termination of his F-1

student status. He learned of that termination when Dartmouth saw that DHS had terminated his

F-1 student status in SEVIS, the database that exists to track and document the continuing status

of noncitizen students who are authorized to study in the United States.

The defendants say otherwise. They argue repeatedly that DHS has not changed Liu's F-1

student status. Importantly, as discussed below, they refuse to present competent evidence to

support that argument or stipulate to that fact on the record. Instead, they merely argue that DHS

only terminated the record of Liu's F-1 student status in the SEVIS database, an action that they

assert is divorced entirely from Liu's actual F-1 student status. To the defendants, this is an act of

simple record-keeping, one which they argue Liu cannot challenge in this court for many reasons.

The implications of the defendants' arguments are troubling. They conceded at the hearing, as they must, that SEVIS's purpose is to reflect accurately an international student's status. Yet they contend that they purposefully terminated Liu's F-1 status in SEVIS despite purportedly not terminating his actual F-1 status, with the result that the former no longer reflects the latter. The only justification they offered for such an action was that DHS has broad authority to manage its web-based systems as it sees fit.

The potential repercussions of the defendants' position are notable but ultimately irrelevant in this case. Instead, the relevant point is that defendants' argument suffers from a fundamental and fatal flaw: all of the evidence in the record at this stage of the litigation supports Liu's allegation that DHS terminated his actual F-1 student status when it terminated his record in SEVIS.

To begin, although the defendants stated several times during the hearing that DHS did not terminate Liu's actual F-1 student status, they repeatedly declined the opportunity to offer any evidence to support that assertion. They did not accept Liu's offer to confirm in a declaration that he retained his F-1 student status. They refused the court's suggestion that they stipulate that Liu's F-1 student status remained active. Instead, they pointed only to the declaration of Andre Watson, the Senior Official within the National Security Division for Homeland Security Investigations. Doc. no. 15-1. Watson's declaration, included as an exhibit to the defendants' objection to Liu's motion, states: "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP

has never claimed that it had terminated [Liu's] nonimmigrant status." Id., ¶ 11 (emphasis added). This language is not evidence that Liu's F-1 student status remains active, and the defendants' refusal to stipulate that it remains active only underscores the equivocal language of Watson's statement.

For his part, Liu presents several pieces of evidence to support his allegation that his SEVIS record accurately reflected DHS's termination of his F-1 student status. On April 4, 2025, DHS terminated Liu's F-1 record in SEVIS and added the following notation: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Doc. no. 10-5 at 2. As discussed above, there are various ways that an F-1 student may fail to maintain his F-1 status. DHS states on its website that a designation in SEVIS of "OTHERWISE FAILING TO MAINTAIN STATUS" means that "[t]he student has not maintained status."[4] Thus, on April 4, 2025, DHS's notation in Liu's SEVIS record showed that DHS had terminated Liu's record because he had not maintained his F-1 student status.

It is worth noting that the defendants attempted to distance themselves from the April 4, 2025 SEVIS entry by highlighting that DHS subsequently changed the entry. Specifically, on April 8, 2025, after Liu instituted this action, DHS changed the notation to read: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Doc. no. 10-15 at 2. To the extent that the defendants believe that this

---

[4] SEVIS SELF HELP HUB, Department of Homeland Security, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last checked Apr. 29, 2025).

belated change somehow demonstrates that DHS terminated only Liu's record in SEVIS and not his actual F-1 student status, that argument is unpersuasive.

The State Department's own guidance document further supports the conclusion that a student's SEVIS record is a manifestation of a student's F-1 status. The Foreign Affairs Manual, an "authoritative source" for State Department polices that "convey[s] codified information to Department staff and contractors,"[5] explains that "the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility." 9 F.A.M. 402.5-4(B).

Indeed, the evidence before the court at this stage demonstrates that DHS officials and agencies follow this directive and construe a student's SEVIS record as the equivalent of his actual F-1 student status. For example, Liu submitted a letter from USCIS regarding a petition for a student to be classified as a temporary worker. The letter notes that "[a]ccording to the [student's] SEVIS record . . . their F-1 nonimmigrant status was terminated on April 10, 2025 because of the criminal records check and the revocation of their F-1 visa." Doc. no. 18-1 at 3. Though the specific facts surrounding that student's immigrations status were distinguishable from Liu's, USCIS construed the termination of the student's F-1 status in the SEVIS system as the termination of his actual F-1 student status. Specifically, USCIS stated that in light of the student's SEVIS record, "[i]t appears that the [student] is not in valid F-1 nonimmigrant status" and concluded that the student has "failed to maintain [his] nonimmigrant status." Id.

Liu's January 2, 2022 encounter with CBP officials at the airport in Detroit is further evidence that DHS agencies equate the termination of his F-1 status in the SEVIS system with the termination of his actual F-1 status. Despite confirmation from Liu's department chair at

---

[5] Foreign Affairs Manual, U.S. Department of State, https://fam.state.gov (last accessed Apr. 29, 2025).

Wake Forest that his student status was active, CBP officials would not allow Liu to enter the country because he did not have an active F-1 status in the SEVIS database. Liu was able to return to the United States to continue his studies only after the DSO at Wake Forest successfully updated his F-1 status in the SEVIS database.

The evidence in the record at this stage of the litigation leads to only one conclusion. DHS terminated Liu's F-1 student status when it terminated his record in SEVIS. The fact that Liu learned of and began suffering consequences of the termination because the action was reflected in the SEVIS database does not transform his claims into a record-keeping challenge. Liu's claims are clear — he challenges DHS's termination of his F-1 student status as it is manifested in the SEVIS database.

## II.    Likelihood of Success on the Merits

Liu argues that he can show a likelihood of success on his claims that the defendants violated his Fifth Amendment Due Process Rights (Count 1) and his rights under the APA (Count 2) when DHS terminated his F-1 student status in the SEVIS system. Because the parties devote the bulk of their briefing to Liu's likelihood of success on his APA claim in Count 2, the court begins by discussing that claim.

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 16 (2020) (quoting Franklin v. Massachusetts, 505 U.S. 788, 796 (1992)). "It requires agencies to engage in 'reasoned decisionmaking,' Michigan v. EPA, 576 U.S. 743, 750 (2015), and directs that agency actions be 'set aside' if they are 'arbitrary, capricious,'" an abuse of discretion, or otherwise not in accordance with law. Id. (quoting 5

U.S.C. § 706(2)(A)) (cleaned up). In making that determination, the court must "assess only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment[.]'" Id. (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).

Liu argues that he is likely to succeed on his APA claim because "DHS's ability 'to terminate an F-1 student status is limited by 8 C.F.R. § 214.1(d).'" Doc. no. 10-1 at 8 (quoting Jie Fang v. Dir. U.S. Immigr. & Customs Enf't, 935 F.3d 172, 185 n. 100 (3d Cir. 2019) (brackets omitted)). As discussed above, § 214.1(d) provides three specific circumstances under which DHS can terminate a nonimmigrant's F-1 student status. Liu argues that it is undisputed that none of the conditions that would have allowed DHS to terminate his F-1 student status under § 214.1(d) occurred. Therefore, according to Liu, DHS has not complied with the regulation and its actions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

The defendants argue that Liu has failed to show a likelihood of success on the merits of his APA claim for several reasons. They contend first that there is no case or controversy here. Second, that the APA's waiver of sovereign immunity does not extend to Liu's claim because the Privacy Act of 1974, 5 U.S.C. § 552a, exclusively governs any claim related to information in SEVIS. Third, that even if the Privacy Act does not preclude APA review of Liu's claim, the act Liu complains of is not a final agency action. And finally, that DHS's termination of Liu's SEVIS status was not arbitrary or capricious.

A.    Case or Controversy

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III § 2. The defendants argue that there is no case or controversy here because Liu's status in the SEVIS system is distinct from his actual F-1 student status. The defendants contend that because Liu's claims do not relate to his actual F-1 student status, and because there is no evidence to support the allegation that his F-1 student status has changed, there is not a justiciable case or controversy.

The court rejects the defendants' argument in light of its conclusion above. The evidence at this stage of the litigation supports the conclusion that DHS terminated Liu's F-1 student status. Therefore, the defendants' argument that there is no case or controversy is misplaced.

B.    Privacy Act

The APA waives sovereign immunity for actions in federal district court by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. But the "waiver does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 215 (2012) (quoting § 702).

The defendants argue that Liu is not likely to succeed on the merits of his APA claim because the APA's waiver of sovereign immunity does not extend to his claim. They contend that instead, the Privacy Act exclusively governs his claim seeking to "amend the status field contained in his SEVIS record" and "forecloses relief," doc. no. 15 at 20, because it limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence," id. at 15.

16

The court need not address the defendants' arguments in depth because, as discussed above, they are based on a flawed premise. Liu is not seeking to correct a factual error in his SEVIS record such that his claim could potentially implicate the Privacy Act. See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz, 601 U.S. 42, 63 (2024) (noting that the Privacy Act was "passed to protect the privacy of individuals identified in federal information systems" and "addresses the government's retention and disclosure of personal information" while allowing individuals to seek a court order requiring it to change "inaccurate information" and "correct its records"). To the contrary, Liu's APA claim is based on the allegation that his SEVIS record accurately reflects that DHS unlawfully terminated his F-1 student status. In other words, it is DHS's termination of his F-1 student status, as that action is manifested in the SEVIS database, that Liu challenges here.

The Privacy Act is thus irrelevant to Liu's claim because it is not "a vehicle for amending the judgments of federal officials as those judgments are reflected in records maintained by federal agencies." Barnett v. United States, 195 F. Supp. 3d 4, 7 (D.D.C. 2016) (quoting Kleinman v. Dep't of Energy, 956 F.2d 335, 337–38 (D.C. Cir. 1992)) (ellipses omitted); Almahdi v. Lyons, No. CIV.A. 05-0218 RMC, 2006 WL 751331, at *3 (D.D.C. Mar. 21, 2006) ("Fundamentally, the Privacy Act is not the way to challenge the ultimate agency determination."). Therefore, Liu's claim, which challenges DHS's substantive determination, is outside of the Privacy Act's reach.

Even if the court were willing to accept the incongruity between the SEVIS record and Liu's F-1 student status pressed by the defendants, the Privacy Act would not bar Liu's APA claim because his SEVIS record is not a "record" under the Privacy Act for the same reason that the defendants argue that the Privacy Act would foreclose relief—Liu is not an "individual"

under the Act. See § 552a(a)(2) (defining "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence"). Because he is not an "individual," his SEVIS record is not a "record" under the Privacy Act. See § 552a(a)(4) (defining "record" as "an item, collection, or grouping of information about an individual that is maintained by an agency") (emphasis added).

The court notes for the sake of completeness that even if Liu's claim could come under the Privacy Act, he would not be precluded from pursuing his APA claim. "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." All. for Retired Ams. v. Bessent, No. CV 25-0313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025); see Madan B K, 2025 WL 1171572, at *5. Thus, the Privacy Act does not displace relief under the APA.


C.    Final Agency Action

Courts may not review agency actions under the APA unless they represent a "final agency action for which there is no other adequate remedy in a court." Harper v. Werfel, 118 F.4th 100, 116 (1st Cir. 2024) (quoting 5 U.S.C. § 704). An agency action is final when it satisfies two conditions: (1) the action "must mark the consummation of the agency's decisionmaking process"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Id. (quoting Bennett v. Spear, 520 U.S. 154, 178 (1997) (further quotations omitted)).

Again basing their argument on a misunderstanding of Liu's claim, the defendants argue that DHS's change to Liu's SEVIS record is not a final agency action. They contend that the

change does not mark the consummation of any decision-making process because it is, in effect, a meaningless action. And they argue that legal consequences do not flow from the mere termination of a SEVIS record because it does not have any bearing on a student's nonimmigrant status.

As with their other positions, the defendants' arguments are misplaced. Liu challenges DHS's termination of his F-1 student status, not his SEVIS record. Further, the evidence already discussed establishes that significant consequences flow from the termination of Liu's SEVIS record and F-1 student status. Even if Liu seeks reinstatement of his status, which is not mandatory, USCIS is not required to grant reinstatement and Liu is not entitled to appeal that decision. Liu challenges a final agency action under the APA. See Jie Fang, 935 F.3d at 179–85; Madan B K, 2025 WL 1171572, at *6 (collecting cases).


D.    Violation of the APA

Because the defendants construe Liu's claim as one challenging his SEVIS records, they do not address directly whether DHS's act of changing Liu's F-1 student status was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. § 706(2)(A). But they submit, however briefly, that Liu could not meet that standard. They note that § 214.1(d) "provides three mandatory scenarios in which nonimmigrant status 'shall' be terminated without review. It does not, however, suggest that nonimmigrant status cannot be terminated for other reasons." Doc. no. 15 at 26 (citations omitted). In other words, because § 214.1(d) does not explicitly limit DHS's ability to terminate a nonimmigrant student's F-1 status to only the three reasons listed in that regulation, DHS did not violate the APA by failing to comply with that regulation.

Assuming that the defendants' interpretation of § 214.1(d) is correct—and there is authority holding that it is not, see Jie Fang, 935 F.3d at 176—that interpretation does not undermine Liu's APA claim. "An agency's decision is arbitrary and capricious if the agency relied on improper factors . . . or when a reasonable explanation for the agency's decision cannot be discerned." Gulluni v. Levy, 85 F.3d 76, 82 (1st Cir. 2023); see Motor Vehicle Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983) (agency action is considered arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

Section 214.1(d) allows DHS to terminate a student's F-1 status for three reasons. Students can also fail to maintain their F-1 status if they do not comply with certain regulatory requirements, such as failing to maintain a full course of study or other violations of their requirements under § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances in which certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment or being convicted of a crime of violence subject a potential sentence of more than a year, "constitute a failure to maintain status." When, as here, DHS terminates a student status and denotes in SEVIS that the reason is "OTHERWISE FAILING TO MAINTAIN STATUS," it must "clearly explain how the student failed to maintain status."[6]

The defendants do not argue that DHS terminated Liu's status under § 214.1(d) or that Liu failed to maintain his status under any applicable regulation. Their briefing fails to identify

---

[6] SEVIS SELF HELP HUB, Department of Homeland Security, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last checked Apr. 29, 2025).

any regulation to support DHS's ability to terminate Liu's F-1 student status. The closest the defendants come to an explanation is the statement in Watson's declaration that DHS terminated Liu's F-1 student status because he sought admission into the United States on January 2, 2022, but was denied entry. Doc. no. 15-1, ¶¶ 7-8. Unsurprisingly, the defendants do not attempt to suggest that this encounter is a lawful justification for terminating Liu's F-1 student status. And they admit that they changed the reason for termination in the SEVIS database after this litigation began.

At oral argument, the court inquired whether the defendants intended to argue that any law or regulation authorized them to terminate Liu's status. They offered only the general authority Congress conferred under 8 U.S.C. § 1372 to develop and conduct a program to collect information regarding nonimmigrant students seeking F-1 student status and approved institutions. They offered no argument connecting the authority to collect information to the decision to terminate Liu's status.

To survive judicial review under the APA, an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43 (quotation omitted). Based on the record before the court at this stage of the litigation, the defendants are unable to meet that standard.

For these reasons, Liu has shown a likelihood of success on the merits of his claim under the APA in Count 2.[7]

---

[7] Because the court finds that Liu has shown a likelihood of success on the merits of his APA claim in Count 2, it does not address at this time his claim in Count 1 that DHS violated his due process rights under the Fifth Amendment when it terminated his F-1 status in the SEVIS system.

III.    Irreparable Harm

Liu claims that he will suffer irreparable harm absent a preliminary injunction in several ways. First, because DHS terminated his F-1 status, he is no longer authorized to work as a research assistant or eligible to receive any stipend from his Ph.D. program. These are his only sources of income, and he is neither seeking nor able to recover money damages in this suit. Second, his inability to continue his research will delay his academic timeline and may threaten his ability to receive any departmental funding. Third, every day that he does not have F-1 student status makes it less likely that he would be able to reinstate his status in the future. Fourth, Liu may face possible detention and deportation because of his status.

Turning first to Liu's inability to recover money damages in this case, there is no dispute that he is neither seeking nor able to recover monetary damages in this case. The APA does not waive the government's sovereign immunity with regard to a claim seeking money damages. § 702. And monetary damages are unavailable for Fifth Amendment violations brought against federal officials in their official capacity. See Rosario v. Boyer, 23-cv-258-JL-AJ, 2024 WL 5202622, at *4 n.5 (D.N.H. Nov. 21, 2024) (citing Egbert v. Boule, 596 U.S. 482, 498-99 (2022)), report and recommendation approved 2024 WL 5200634 (D.N.H. Dec. 23, 2024)). Economic losses such as Liu's loss of stipend can be considered irreparable harm because he has no adequate remedy at law to recover for his damages. See, e.g., N.H. Hosp. Ass'n v. Burwell, No. 15-CV-460-LM, 2016 WL 1048023, at *17-18 (D.N.H. Mar. 11, 2016) (holding that the plaintiffs showed that they would suffer irreparable harm from economic losses absent a preliminary injunction because they could not recover monetary damages under the APA); Chef Time 1520 LLC v. Small Bus. Admin., 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) (citing cases supporting the conclusion that the lack of availability of money damages for APA claims weighs

in favor of a finding of irreparable harm); Nat'l Mining Ass'n v. Jackson, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("[I]f a movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future because of, among other things, sovereign immunity, financial loss can constitute irreparable injury." (quotations omitted)). Here, the economic losses stemming from Liu's inability to work as a research assistant or receive his stipend if his F-1 student status remains terminated constitute irreparable harm.

In addition, Liu's inability to continue his research because of DHS's termination of his F-1 status has significant and irreparable consequences for his academic trajectory. Dartmouth policy states that departmental funding is generally not guaranteed beyond a student's fifth year in the Ph.D. program. Doc. no. 10-16 at 3. Further, students who have not completed the program by the end of their seventh year usually face removal from the program. Id. at 4. Moreover, at this stage of his program, Liu is required to participate in at least two terms of research per year. Id. This delay and threat to Liu's ability to complete his Ph.D. program cannot be redressed and constitute irreparable harm in light of the facts of this case. See Doe v. Noem, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (holding that the plaintiff had demonstrated that he would suffer irreparable harm absent injunctive relief because he "is currently unable to continue in his academic work, and should that condition persist, he faces loss of grants and an inability to complete his degree").

Further, absent injunctive relief, Liu may accrue time during which he is considered out of F-1 status as a result of DHS's actions, which may make it impossible for him to reinstate his status. Absent exceptional circumstances, the USCIS may consider a student's request to reinstate his F-1 status only if he has "not been out of status for more than 5 months at the time

of filing the request for reinstatement." 8 C.F.R. § 214.2(f)(16)(i)(A). Thus, Liu's daily accrual

of time out of F-1 status increases the risk that he will be unable to reinstate his status, which

would in turn mean that he would never be able to continue his research at Dartmouth. Such

harm is irreparable. See, e.g., Patel v. Bondi, No. 1:25-CV-00101, 2025 WL 1134875, at *2

(W.D. Pa. Apr. 17, 2025).

Finally, the termination of Liu's F-1 status and SEVIS record exposes him to the

possibility of removal.[8] The threat of removal constitutes irreparable harm in this case because of

the interplay between Liu's immigration status and his academic and professional development.

If Liu were indeed removed, that "would effectively eliminat[e] his ability to complete his

degree program, causing him economic and reputational loss wherever he ultimately resides."

Doe, 2025 WL 1141279, at *8. Even if Liu were somehow able to repatriate, there is no

guarantee that he could return to his program at Dartmouth—he may need to re-apply for

admission, repeat courses, and restart research. See id. The permanent disruption to Liu's

education would render the past two years he has spent at Dartmouth significantly less valuable

because they would not be attached to a degree. Further, were he to enroll at some other

program, he may not be able to return to some of the research he started at Dartmouth and would

need to start anew.

For these reasons, Liu has shown that he is likely to suffer irreparable harm absent a

preliminary injunction.

---

[8] SEVIS HELP HUB Terminate a Student, Department of Homeland Security,
https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-
terminations/terminate-a-student (last visited April 29, 2025). ("When an F-1/M-1 SEVIS record
is terminated, the following happens: . . . Immigration and Customs Enforcement (ICE) agents
may investigate to confirm the departure of the student").

IV.    <u>Remaining Factors</u>

The remaining factors weigh in Liu's favor. "The public has a vested interest in a federal government that follows its own regulations." Doe, 2025 WL 1141279, at *9. The defendants argue that the "public interest in enforcement of United States immigration laws is significant," doc. no. 15 at 33, but they fail to show that DHS has complied with any immigration law or regulation in this case or that Liu's status was revoked due to his failure to comply with any immigration law or regulation. Further, Liu has shown the likely significant hardship that he will endure absent preliminary injunctive relief, and the defendants have shown none.

V.    <u>Bond</u>

Under Federal Rule of Civil Procedure 65(c), in granting a preliminary injunction, the court must require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The court has discretion to waive Rule 65(c)'s bond requirement. <u>See</u> Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers, 679 F.2d 978, 1001 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526 (1984).

The defendants request that Liu post a security bond, though they do not request a specific amount or explain any costs they will incur by complying with the preliminary injunction, much less any damages they will have sustained if the court later determines that it erred in granting Liu's motion. Therefore, the court exercises its discretion to waive the bond requirement.

Conclusion

For the foregoing reasons, the plaintiff's motion for a preliminary injunction (doc. no. 10) is granted. All defendants are (i) enjoined from terminating Mr. Liu's F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) required to set aside their determination that Liu's F-1 student status is terminated. This order shall remain in effect until further order of the court.

SO ORDERED

_____
Samantha D. Elliott
United States District Judge

April 29, 2025

cc: Counsel of Record.